Willard M. ARNOLD, etc., Plaintiff,

v.

The ARNOLD CORPORATION, et al., Defendants.

No. C86–5208A.

United States District Court,
N.D. Ohio, E.D.

July 30, 1987.

Phillippe M. Salomon, Willkie, Farr & Gallagher, New York City, Steven Sigalow, Buckingham, Doolittle & Burroughs, Akron, Ohio, for plaintiff.

Mark Staib, David Weiner, Hahn, Loeser & Parks, Cleveland, Ohio, John Hupper, Stephen Poss, Cravath, Swaine & Moore, New York City, for defendants.

## MEMORANDUM OPINION

DOWD, District Judge.

The plaintiff, Willard M. Arnold, has brought suit against the Arnold Corporation, the successor of Arnold Graphic Industries, Inc., a corporation Arnold founded in 1951. In the original complaint, Arnold, on behalf of himself and as trustee of a trust for the benefit of his grandchildren, alleged that defendant Arnold Corporation violated § 10(b) of Exchange Act of 1934, and Rule 10b–5 of the regulations promulgated by the Securities and Exchange Commission (SEC); violated the Ohio Securities Act; and committed common law fraud. The illegal conduct of the defendant arose out of a stock purchase agreement entered into by Arnold and the Arnold Corporation in which Arnold sold all his stock, accumulated dividends, and all other interest in the Arnold Corporation for $2.5 million.

Arnold filed an amended complaint on April 6, 1987. The amended complaint again named the Arnold Corporation as a defendant, but added seven individuals and a corporation as defendants. The individuals are all either officers of the corporation or members of the Board of Directors; the corporation is the broker-dealer that assisted in the stock purchase agreement. The amended complaint alleged in greater detail the factual circumstances and historical background of the negotiation and execution of the stock purchase agreement. The amended complaint realleged the causes of action contained in the original complaint, and added a claim under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1964(a), and a state claim based on breach of fiduciary duty. The plaintiff seeks damages in excess of $8 million, the amount he claims was the actual value of the stock for which he received $2.5 million, for the federal securities violation and the common law claims, and treble damages in excess of $25 million for the violation of the RICO statute.

Defendant Arnold Corporation, in response to the original complaint, filed a motion to compel arbitration, or in the alternative, to dismiss for failure to plead fraud with the particularity required under Rule 9(b) of the Federal Rules of Civil Procedure. After the plaintiff amended the original complaint, the combined defendants filed a motion to compel arbitration, or in the alternative, to dismiss the amended complaint for failure to state a claim upon which relief may be granted and for failure to plead fraud with particu-

larity. The defendants also moved to dismiss certain defendants for lack of venue and for lack of personal jurisdiction. The motions addressed to the allegations raised in the amended complaint are currently before the Court, as the Court considers the motions addressed to the original complaint to be moot.

The Court need not delve into detail about the allegations contained in the plaintiff's amended complaint, because the Supreme Court has recently made clear that securities claims and RICO claims arising out of contracts that include a clause providing that all disputes arising under the agreement are subject to mandatory arbitration are enforceable. There is no dispute that § 8(b) of the Stock Purchase Agreement provides for mandatory and binding arbitration for any dispute arising out of the agreement. In *Shearson-Lehman/American Express, Inc. v. McMahon*, — U.S. —, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987), the Supreme Court held that agreements to arbitrate claims arising under the Exchange Act are enforceable to the extent enforcement is consistent with the provisions of the Arbitration Act. *Id.* at 2343. The Supreme Court also held in *McMahon* that claims arising under the RICO statute are enforceable to the extent enforcement is consistent with the Arbitration Act. *Id.* at 2346. The Court rejected arguments that the language or legislative history of either statute suggest that Congress intended to except either type of claim from the requirements of the Arbitration Act. Based on *McMahon*, the Court finds that the federal claims alleged in the plaintiff's complaint are subject to arbitration as provided in the arbitration clause in the stock purchase agreement. In addition, the Court finds that the state claims alleged in the plaintiff's complaint are also subject to arbitration. *See Dean Wittner Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221, 105 S.Ct. 1238, 1242–43, 84 L.Ed.2d 158 (1985).

Arbitration is not compelled in every instance, however. The Supreme Court, relying on language contained in the Arbitration Act, has established a "well-pleaded fraud" exception to the rule that courts must enforce agreements to arbitrate. Specifically, courts must enforce agreements to arbitrate "[a]bsent a well-founded claim that an arbitration agreement resulted from the sort of fraud or excessive economic power that "would provide grounds 'for the revocation of any contract....'" *McMahon*, 107 S.Ct. at 2337 (quoting *Wilko v. Swan*, 346 U.S. 427, 432, 74 S.Ct. 182, 185, 98 L.Ed. 168 (1953)). The plaintiff, in paragraph 30 of the amended complaint, has alleged that the agreement to arbitrate was induced by fraud:

Unknown to Mr. Arnold, the inclusion of a provision purporting to bind him to arbitration was merely a further step in a wide-ranging campaign by defendants to enrich themselves at Mr. Arnold's expense. More specifically, it was vital to the successive defendants' scheme to defraud Mr. Arnold, that the true facts and circumstances surrounding the sale of Mr. Arnold's holdings in Arnold Corp. and their plan to re-issue those to themselves on the eve of the sale of the Company remain hidden and undisclosed. Acting upon their own business experience and the advice of counsel, defendants demanded an arbitration provision in the Stock Purchase Agreement that could be invoked to preclude or, at a minimum, inhibit Mr. Arnold's ability to discover the true undisclosed facts leading up to and underlying the Stock Purchase Agreement. In short, defendants fraudulently induced Mr. Arnold to subscribe to the arbitration provision.

It is clear that fraud sufficient to override the strong policy in favor of enforcing arbitration clauses must relate to the procurement of the arbitration clause itself, and not to the agreement as a whole. *See, e.g., Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967); *Dorton v. Collins & Aikman Corp.*, 453 F.2d 1161 (6th Cir. 1972). The allegations in paragraph 30 clearly relate to an alleged fraud in the procurement of the arbitration clause. Thus the issue becomes whether the allegations contained in paragraph 30 are sufficient to convince the Court to refuse to

compel arbitration, or at a minimum sufficient to convince the Court to allow the plaintiff to conduct discovery with respect to the alleged fraud in the inducement of the arbitration clause.

The defendants argue that the plaintiff's allegations must contain substance, and must comply with the pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure. The Court agrees, and concludes that the allegations in paragraph 30 are insufficient to meet the mandate of Rule 9(b) and the exception described in *McMahon*. First, the plaintiff fails to specify which of the individual defendants actively sought to dupe the plaintiff into agreeing to the arbitration clause. Second, the plaintiff fails to supply the Court with any factual circumstances that suggest that the unspecified defendants intended to use the arbitration clause as a sword to prevent plaintiff from discovering the fact of the alleged fraudulent stock purchase scheme. Third, the plaintiff does not allege that he objected to the provision, or that the defendant insisted or otherwise coerced the plaintiff into accepting the provision. The plaintiff supplies no facts that suggest any desire on the part of the unspecified defendants to reap a benefit from the agreement over and above the normal benefit of such agreements in the event disputes arise from the terms of the agreement: limited, less burdensome, and less extensive discovery than the wide-open discovery that is *de rigueur* in civil litigation taking place in state and federal courts alike. In sum, the plaintiff alleges nothing more than conclusory allegations of fraud in the inducement and the making of the arbitration clause, and these allegations are insufficient to convince the Court to invoke the exception to the strong federal policy in favor of enforcing arbitration clause in contracts.

Two other factors buttress the Court's conclusion. First, the contract signed by the plaintiff includes a provision, in paragraph 6(d), in which the plaintiff "acknowledge[s] that [he] is fully familiar with the business affairs and financial condition of the Corporation and [he] is fully capable of evaluating the merits and risks of the sale of the Preferred Stock and the Common Stock to the Corporation." This explicit agreement by the plaintiff strongly suggests what it states: that he entered the sales agreement with an understanding of the factual background of the business affairs and financial condition of the corporation, and of the value of his own preferred stock and common stock, and deliberately and consciously chose to enter into the agreement. This express contractual provision stands in stark contrast to the plaintiff's conclusory allegations of fraud.

Second, the relationship between the plaintiff and the defendant belies the plaintiff's meager factual showing in support of the allegations of fraud. The plaintiff is a sophisticated businessman who built a small local business into a multi-million dollar corporation. He formerly was the president, chief executive officer, and principal shareholder of Arnold Graphic Industries, Inc., the corporation that eventually became the Arnold Corporation. He stood at least on equal par with the persons in the Arnold Corporation with whom he dealt in consummating the stock purchase agreement. In addition, Arnold was represented and counseled by an attorney during the negotiation of the agreement. The conclusory allegations of fraud seem less convincing when considered in the light of the plaintiff's business experience.

Based on the foregoing, the Court concludes that the plaintiff's conclusory allegations of fraud in paragraph 30 of the amended complaint fail to meet the threshold necessary to convince the Court that the allegations of fraud in the inducement of the arbitration clause are so substantial as to justify an exception to the federal policy in favor of arbitration. Moreover, the conclusory allegations are insufficient to compel the Court to allow the plaintiff to conduct discovery into the nature of the alleged fraud relating to the inducement of the arbitration agreement. The Court fails to see how discovery at this point would produce facts and evidence unknown or unavailable to the plaintiff at the time he entered into the stock purchase agreement. In the Court's opinion, allowing conclusory

allegations of fraud, such as those pleaded by the plaintiff in his complaint, to suffice to derail arbitration, or even to compel limited discovery, would allow the exception to swallow the rule. Based on the well-established judicial mandate in favor of arbitration as set forth in the Federal Arbitration Act, the unique level-playing field relationship between the plaintiff and the defendant, and the plaintiff's acknowledgement of awareness of the facts and circumstances surrounding the stock purchase, the Court concludes the claim of fraud must be specific and directed to the making of the arbitration clause order to allow even limited discovery into whether the alleged fraud touched the arbitration clause.

■ The plaintiff argues that the arbitration clause in the agreement is only binding on those defendants that are actual signatories to the Stock Purchase Agreement and that his case should continue against those defendants who are not parties to the agreement. This argument is unavailing, because if the plaintiff can avoid the practical consequences of an agreement to arbitrate by naming non-signatory parties as plaintiffs in his complaint, or signatory parties in their individual capacities only, the effect of the rule requiring arbitration would, in effect, be nullified. Again, to allow a plaintiff to side step the arbitration process in this manner would effectively eviscerate the federal policy in favor of arbitration. The Court is unwilling to go that far.

Accordingly, the Court grants the defendants' motion to compel arbitration with respect to all the allegations and claims in the plaintiff's amended complaint.

IT IS SO ORDERED.