920 F.2d 1269
 Fed. Sec. L. Rep. P 95,656, RICO Bus.Disp.Guide 7636
 Willard M. ARNOLD, individually and as Trustee for Charles
V. Arnold and Steven T. Arnold, Plaintiff-Appellant,
v.
The ARNOLD CORPORATION--PRINTED COMMUNICATIONS FOR BUSINESS;
Wayne C. Jira; John E. Lautzenheiser; Jeffrey Kenner;
John W. Jordan II; Howard P. Colhoun; Edward C. Mabbs;
Richard T. Lindgren; and Carl Marks & Co., Inc.,
Defendants-Appellees.
 Nos. 87-3825, 88-4077 and 88-8366.
 United States Court of Appeals,
Sixth Circuit.
 Argued Sept. 17, 1990.
Decided Dec. 3, 1990.
 
 Melissa A. Robertson, Willkie, Farr & Gallagher, Washington, D.C., Steven E. Sigalow, Joseph C. Weinstein, Jones, Day, Reavis & Pogue, Cleveland, Ohio, Richard L. Klein, Philippe M. Salomon, Willkie, Farr & Gallagher, New York City, Russell G. Ryan, Willkie, Farr & Gallagher, Washington, D.C., Diana B. Simon, New York City, for plaintiff-appellant.
 Arthur M. Kaufman, Mark E. Staib, David C. Weiner, Patricia A. Hemann, Hahn, Loeser & Parks, Cleveland, Ohio, John R. Hupper, James L. Buchal, Cravath, Swaine & Moore, New York City, for defendants-appellees.
 Before KENNEDY and MARTIN, Circuit Judges, and CONTIE, Senior Circuit Judge.
 CONTIE, Senior Circuit Judge.
 
 
 1
 Plaintiff-appellant, Willard Arnold, individually and as Trustee for his grandsons, Charles and Steven Arnold, appeals from the district court's order requiring arbitration of the claims set forth in his amended complaint. For the following reasons, we affirm the order of the district court.I.
 
 
 2
 Willard Arnold founded Arnold Graphic Industries, Inc. (A.G.I.), predecessor of the Arnold Corporation--Printed Communications for Business (Arnold Corporation) in 1951, and ran the company for thirty years. During this time, Arnold was President, Chief Executive Officer, and principal stockholder of A.G.I.
 
 
 3
 In July of 1980, representatives of Carl Marks & Co., a broker-dealer registered pursuant to the Securities Exchange Act, approached Arnold with a proposal to acquire a substantial majority of the shares of A.G.I. Thereafter, through a series of transactions consummated in January of 1981, A.G.I. merged with and became a wholly-owned subsidiary of C.M.-Graphic Acquisitions, Inc. (CM-Graphic), a company formed by Carl Marks & Co. for the purposes of the merger.
 
 
 4
 Under the terms of a subscription agreement executed in connection with the merger, a trust for the benefit of Arnold's grandsons subscribed to twenty percent of the common stock of A.G.I., ultimately retaining seventeen percent thereof, and Arnold subscribed to an aggregate of twenty-three percent of the preferred stock of CM-Graphic for a total purchase price of $100,000 and $300,000 respectively. Arnold was elected Chairman of the Board of Directors of CM-Graphic. Appellees Jordan and Kenner were also elected to the Board of Directors of CM-Graphic. Additionally, Jordan was elected President and Kenner was elected Vice-President, Secretary, and Treasurer of the new parent corporation. At all times relevant to this litigation, the remaining appellees, with the exception of Carl Marks & Co., were also officers and/or on the Board of Directors.[1]
 
 
 5
 Pursuant to a plan of merger and partial liquidation dated December 31, 1981, CM-Graphic changed its name back to Arnold Graphic Industries, Inc. (A.G.I.). In August of 1982, A.G.I. became The Arnold Corporation--Printed Communications for Business (Arnold Corporation).
 
 
 6
 On August 6, 1985, Arnold, individually and as Trustee, entered into a stock purchase agreement with Arnold Corporation. The stock purchase agreement provided, inter alia, for the sale by Arnold and the purchase by Arnold Corporation of the 300 shares of the preferred stock held by Arnold in his individual capacity and the 170,000 shares of the common stock held by Arnold as Trustee. The stock purchase agreement recited that Arnold Corporation was to purchase Arnold's preferred stock for the original subscription price of $300,000 and Arnold's common stock held in trust for $2.2 million or approximately thirteen dollars per share. Arnold Corporation accounted for the purchase of the common stock, however, at an aggregate price of $1.7 million or ten dollars per share.
 
 
 7
 The stock purchase agreement included an arbitration provision which has become the focus of the present case. The arbitration provision provides as follows:
 
 
 8
 This Agreement shall be governed by and construed in accordance with the laws of the State of Ohio including its conflicts and choice of law principles. Any dispute arising under this Agreement shall be submitted to arbitration under the rules of the American Arbitration Association at its Cleveland office. The decision of the arbitrators shall be binding and entitled to be enforced as the judgment of a court of record.
 
 
 9
 Soon after Arnold's relinquishment of the Arnold Corporation stock, the company began acting in a manner which Arnold had not foreseen. Three months after the sale of Arnold's preferred stock to the company, the Board of Directors formally approved a plan which called for payment of accrued dividends on preferred stock in 1986 and 1987.[2]
 
 
 10
 Additionally, appellees, Jira, Lautzenheiser, Mabbs, Lindgren, Colhoun, Jordan, Kenner and Carl Marks & Co. soon reissued a substantial number of the relinquished shares of common stock to themselves at a subscription price of only seven dollars per share. Appellees Jira and Lautzenheizer paid the subscription price partially in the form of long-term promissory notes payable upon the sale or merger of Arnold Corporation.
 
 
 11
 Arnold Corporation was sold to Reynolds and Reynolds Company soon thereafter, nine months after Arnold had entered into the stock purchase agreement. Reynolds and Reynolds paid over sixty dollars per share for the stock of Arnold Corporation. Appellees profited handsomely from this transaction.
 
 
 12
 On December 16, 1986, Arnold filed a complaint in the United States District Court for the Northern District of Ohio against Arnold Corporation, alleging violations of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 thereunder, violations of the Ohio Securities Act, and common law fraud. On January 29, 1987, Arnold Corporation filed a motion to compel arbitration or in the alternative to dismiss for failure to plead fraud with the particularity required by Federal Rule of Civil Procedure 9(b). On April 6, 1987, Arnold filed a first amended complaint which added the remaining appellees. The first amended complaint also added allegations of Racketeer Influenced and Corrupt Organizations Act (RICO) violations and breach of fiduciary duty to the allegations contained in the first complaint. On May 20, 1987, appellees responded by filing a motion to compel arbitration and to stay this action pending arbitration or in the alternative to dismiss the first amended complaint for failure to state a claim upon which relief can be granted and for failure to plead fraud with particularity and to dismiss certain parties for lack of venue and lack of in personam jurisdiction.
 
 
 13
 On July 30, 1987, the district court filed a memorandum opinion and judgment entry which granted appellees' motion to compel arbitration. The court concluded that Arnold's allegations of fraud in the inducement to arbitrate were insufficient to justify an exception to the strong federal policy in favor of arbitration because they failed to comply with the pleading requirements of Federal Rule of Civil Procedure, Rule 9(b). The district court did not explicitly rule on appellees' motion to stay the proceedings pending arbitration.
 
 
 14
 On August 24, 1987, appellant Arnold filed a notice of appeal from the arbitration order (Appeal No. 87-3825). On June 10, 1988, appeal No. 87-3825 was argued orally before a panel of this court and the panel reserved decision.
 
 
 15
 On July 1, 1988, appellees advised the panel by letter that they wished to challenge the court's jurisdiction to entertain the appeal. On July 14, 1988, appellees filed a motion to dismiss the appeal, alleging that the demise of the Enelow-Ettelson, doctrine in Gulfstream Aerospace Corp. v. Mayacamas Corp., 485 U.S. 271, 108 S.Ct. 1133, 99 L.Ed.2d 296 (1988) precluded this court's appellate jurisdiction over the appeal. In Gulfstream, the Supreme Court overruled the cases establishing the Enelow-Ettelson doctrine that had allowed appeals from district court orders staying a legal action pending arbitration because an agreement to arbitrate a legal dispute was considered an equitable defense for Enelow-Ettelson purposes. Id. 485 U.S. at 287-88, 108 S.Ct. at 1142-43.
 
 
 16
 On October 12, 1988, this court issued an opinion, finding that the demise of the Enelow-Ettelson doctrine raised a "thorny issue of this court's appellate jurisdiction." Arnold v. The Arnold Corporation--Printed Communications for Business, No. 87-3825, slip op. at 7, 8 (6th Cir. Oct. 12, 1988) [860 F.2d 1078 (table) ]. The court found that several ambiguities existed in the district court's memorandum opinion and order, making it difficult to determine if the order was an interlocutory order or a final judgment. For example, although the district court had granted appellees' motion to compel arbitration, it was silent as to appellees' request to stay the proceedings pending arbitration. The court vacated the district court's judgment, remanded the case for clarification, asked the district court to specify which of appellees' requests it had granted, and invited the district court to certify for immediate appeal pursuant to section 1292(b) if its order was interlocutory.
 
 
 17
 On November 8, 1988, the district court entered an Order of Clarification. The order reads as follows:
 
 
 18
 [T]he Court's Order dated July 30, 1987 ... is CLARIFIED as follows:
 
 
 19
 (1) The motion of all defendants to compel arbitration of all claims in this litigation is GRANTED and plaintiff's First Amended Complaint is therefore DISMISSED;
 
 
 20
 (2) The alternative motions of all defendants are DENIED as moot;
 
 
 21
 (3) The parties shall commence the arbitration process no later than forty (40) days following the filing of this Order;
 
 
 22
 (4) In the event that plaintiff prosecutes an appeal from this Order, the arbitration process shall be stayed until the appellate process is completed;
 
 
 23
 (5) In the event that one or more defendants named in plaintiff's First Amended Complaint shall hereafter protest being included in the arbitration, plaintiff shall be entitled to file a new action against any such defendant;
 
 
 24
 (6) The Clerk of the Court is directed to enter final judgment in accordance with this Order; and
 
 
 25
 (7) In the event that any question arises as to the finality of this Order or its appealability under 28 U.S.C. Sec. 1291, the Court hereby certifies this Order for immediate appeal, pursuant to 28 U.S.C. Sec. 1292(b), because the Court is of the opinion that the Order involves controlling issues of law as to which there is substantial ground for difference of opinion and that an immediate appeal may materially advance the ultimate termination of the litigation.
 
 
 26
 On November 18, 1988, appellant filed a notice of appeal from the order of clarification, which was docketed as No. 88-4077. Appellant simultaneously filed a Petition for Permission to Appeal pursuant to 28 U.S.C. Sec. 1292(b) to preserve his right in the event that this court subsequently held that the district court's order of clarification was interlocutory. That appeal was docketed as No. 88-8366. Appellees filed their objection to the petition on November 28, 1988. On December 23, 1988, appellees served a motion to dismiss appeal No. 88-4077.
 
 
 27
 By order dated June 20, 1989, this court granted appellant's motion to consolidate appellant's three pending appeals and referred all outstanding jurisdictional issues to the panel assigned to decide the merits of the consolidated appeals. By order filed August 16, 1989, this court recalled the mandate in No. 87-3825 and reinstated the appeal to its active docket.
 
 II.
 
 28
 This court must first decide if it has jurisdiction to hear this appeal.
 
 
 29
 On November 19, 1988, while these appeals were pending, the President signed into law the Judicial Improvements and Access to Justice Act.[3] Section 1019 of the Act amended Title 9 of the United States Code by adding a new section 15, which provides:
 
 15. Appeals
 
 30
 (a) An appeal may be taken from(1) an order--
 
 
 31
 (A) refusing a stay of any action under section 3 of this title,
 
 
 32
 (B) denying a petition under section 4 of this title to order arbitration to proceed,
 
 
 33
 (C) denying an application under section 206 of this title to compel arbitration,
 
 
 34
 (D) confirming or denying confirmation of an award or partial award, or
 
 
 35
 (E) modifying, correcting, or vacating an award;
 
 
 36
 (2) an interlocutory order granting, continuing, or modifying an injunction against an arbitration that is subject to this title; or
 
 
 37
 (3) a final decision with respect to an arbitration that is subject to this title.
 
 
 38
 (b) Except as otherwise provided in section 1292(b) of title 28, an appeal may not be taken from an interlocutory order--
 
 
 39
 (1) granting a stay of any action under section 3 of this title;
 
 
 40
 (2) directing arbitration to proceed under section 4 of this title;
 
 
 41
 (3) compelling arbitration under section 206 of this title; or
 
 
 42
 (4) refusing to enjoin an arbitration that is subject to this title.
 
 
 43
 9 U.S.C. Sec. 15.
 
 
 44
 This new section clarifies congressional intent regarding appealability of arbitration orders. Under the new section 15(a)(1), orders refusing to compel arbitration now are appealable--even though they are not final within the meaning of 28 U.S.C. Sec. 1291. Under the new section 15(b), however, interlocutory orders directing the parties to arbitration are not appealable unless certified for interlocutory review under 28 U.S.C. Sec. 1292(b). Section 15 was enacted by Congress, acting upon the 1986 recommendations of the judicial conference, in order to clarify the appealability standard for orders granting or denying arbitration. In the wake of the demise of the Enelow-Ettelson doctrine in Gulfstream, courts of appeals were treating interlocutory orders granting arbitration and denying arbitration exactly the same for appealability purposes. The House Report concerning section 15 stated that its purpose was to:
 
 
 45
 improve the appellate process in the Federal courts of appeals with respect to arbitration [by providing for] interlocutory appeals ... when a trial court rejects a contention that a dispute is arbitrable under an agreement of the parties and instead requires the parties to litigate. In contrast, interlocutory appeals are specifically prohibited in new section 15 when the trial court finds that the parties have agreed to arbitrate....
 
 
 46
 H.Rep. No. 889, 100th Cong., 2d Sess. 37, reprinted in 1988 U.S.Code Cong. & Admin.News 5982, 5997.
 
 
 47
 Appellees allege that the district court's order of clarification granting appellees' motion to compel arbitration of all claims is precisely the type of interlocutory order favoring arbitration from which an appeal is barred by Sec. 15(b).
 
 
 48
 Appellant contends that because the district court dismissed appellant's first amended complaint, denied appellees' alternative motions as moot, and directed that final judgment be entered, the district court's order of clarification is a final decision appealable under 28 U.S.C. Sec. 1291 and under newly enacted Section 15 of the Federal Arbitration Act, 9 U.S.C. Sec. 15(a)(3), which states that an appeal may be taken from "a final decision with respect to an arbitration that is subject to this title."
 
 
 49
 The issue before this court is thus whether the district court's order of clarification constitutes a final judgment or interlocutory order.
 
 
 50
 We find that the legislative history concerning newly enacted Section 15 of the Federal Arbitration Act is dispositive of this issue. In its section by section analysis of the Act, the Committee on the Judiciary stated:
 
 
 51
 Moreover, under the proposed statute, appealability does not turn solely on the policy favoring arbitration. Appeal can be taken from final judgments, including a final judgment in an action to compel arbitration, a final judgment that refuses to enjoin arbitration, or a final judgment dismissing an action in deference to arbitration. These appeals preserve the general policy that appeals should be available where there is nothing left to be done in the district court.[4]
 
 
 52
 ....
 
 
 53
 Under present doctrine, appeal from orders with respect to arbitration depends not only on the final judgment rule, but also on antique distinctions arising from the days when law and equity were administered by separate courts. The appealability of orders that direct arbitration, stay arbitration, or stay judicial proceedings depend on accidents of procedure that do not respond to any rational needs of either appeals timing or arbitration. The rules as to appealability, moreover, often are obscure.[5]
 
 
 54
 Committee on the Judiciary, Section by Section Analysis on S1482, 100th Cong., 2d Sess., 134 Cong.Rec. S16284, Oct. 14, 1988 (emphasis added).
 
 
 55
 Section 15(a)(3) of the amended Act thus retains prior law allowing appeals from final decisions affecting arbitration whether or not they direct or refuse to direct arbitration. Thomson McKinnon Securities, Inc. v. Salter, 873 F.2d 1397, 1399 (11th Cir.1989). Because in the present case the district court's order of clarification directed the parties to proceed to arbitration, it is appealable under section 15(a)(3) only if it is a final order rather than an interlocutory one.
 
 
 56
 We find that the order of clarification of the district court is a final order within the meaning of section 15. According to the legislative history of section 15, a final order is one which dismisses "an action in deference to arbitration" and enters a final judgment. The district court's order of clarification meets both of these requirements. Moreover, a decision of the district court is final if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Catlin v. United States, 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945).
 
 
 57
 In the present case, this court directed the district court on remand to specify whether, in addition to compelling the parties to arbitrate, the district court intended to dismiss Mr. Arnold's complaint or to stay the proceedings pending the outcome of arbitration. The district court issued an order of clarification which dismissed appellant's complaint in its entirety and denied appellees' "alternative motions as moot." Appellees argue that the district court did not explicitly deny appellees' request for a stay pending arbitration and, in effect, stayed the action. However, in light of the district court's action in dismissing the complaint in its entirety and declaring appellees' alternative motions (in other words, the motion to stay the case pending arbitration) as moot, the district court's actions can be interpreted sensibly only as a dismissal and a denial of a stay.
 
 
 58
 Appellees rely on McCowan v. Dean Witter Reynolds Inc., 889 F.2d 451 (2d Cir.1989) to argue that section 15 forbids immediate appeals from orders favoring arbitration and that it was error for the district court to dismiss the complaint and thus circumvent this prohibition. First, section 15 forbids immediate appeals of interlocutory orders favoring arbitration, but not final orders favoring arbitration. Second, the facts in McCowan are distinguishable from the present case. The district court in McCowan "referred" the case to arbitration. Dean Witter had not moved to stay the proceedings so the district court made no ruling concerning a stay. The eleventh circuit interpreted the district court's use of the word "refer" to signify a reference to 9 U.S.C. Sec. 3, which directs a court "upon being satisfied that the issue ... is referable to arbitration ... [to] stay the trial of the action" pending arbitration. Id. at 453 (emphasis added). The court interpreted the word "refer" as an implicit grant of a stay in spite of the fact that in a subsequent order the district court stated it had "dismiss[ed] all four counts, sending the first two counts to arbitration and giving plaintiffs leave to replead the last two." Id. In contrast, in the present case, the district court was specifically requested in the remand order to rule on appellees' motion for a stay. There is no ambiguity in the district court's language as there was in McCowan--in the present case, the district court denied the stay and dismissed the case.
 
 
 59
 The legislative history of section 15 rejects the prior distinction made between orders brought solely to compel specific performance of an agreement to arbitrate and orders granting or denying requests to compel arbitration entered into, as is the case here, in an ongoing action for legal relief on the underlying claims.[6] 134 Cong.Rec. 516284, supra. We find nothing in the legislative history of section 15 or in the statute which states that the district court may not make a final order ordering arbitration in the course of a lawsuit brought to obtain legal relief. On the contrary, the legislative history states that the proposed amendment does not "turn solely on the policy favoring arbitration" and that appeals may be taken from a "final judgment dismissing an action in deference to arbitration." Id. The legislative history also states that appeals should not depend on the procedural posture of the case. In the present case, the district court considered the parties' arguments regarding the appropriate forum--litigation in the district court or arbitration--and disposed of the case by dismissing the complaint in deference to arbitration and entering final judgment based on its decision that it was not the appropriate forum. Because there is nothing left for the district court to do but execute the judgment, the district court's order is final and appealable under 28 U.S.C. Sec. 1291 and under 9 U.S.C. Sec. 15(a)(3). This court therefore has jurisdiction to hear this appeal.
 
 III.
 
 60
 This court must next decide if appellant has made sufficient allegations of fraud in the inducement of the arbitration agreement to put the "making" of the agreement to arbitrate at issue, in which case the issue of fraud in the inducement of the arbitration clause must be adjudicated by the district court, or whether the allegations are insufficient to provide a well-supported claim of fraud in the inducement of the arbitration agreement, in which case the district court properly ordered the case to proceed to arbitration.
 
 A.
 
 61
 Appellant Arnold argues that the district court erred in compelling him to arbitrate his claims against appellees because his amended complaint sufficiently alleges a claim of fraud in the inducement of the arbitration provision of the contract, which under 9 U.S.C. Sec. 4 of the Federal Arbitration Act is a claim that must proceed to trial. Section 4 of the Act states:
 
 
 62
 The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.... * If the making of the arbitration agreement ... be in issue, the court shall proceed summarily to trial thereof.
 
 
 63
 Before a court may adjudicate an agreement to arbitrate, the party seeking to avoid the arbitration must make "a well-founded claim that an arbitration agreement resulted from the sort of fraud or excessive economic power" that would provide grounds for the revocation of a contract. Shearson/American Express Inc. v. McMahon, 482 U.S. 220, 226, 107 S.Ct. 2332, 2337, 96 L.Ed.2d 185 (1987); see also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 627, 105 S.Ct. 3346, 3354, 87 L.Ed.2d 444 (1985).
 
 
 64
 Appellant contends that his allegation that the arbitration clause was fraudulently included in the contract to help effect a fraudulent scheme is a well-founded claim providing grounds for the revocation of the agreement to arbitrate. Appellant's legal theory finds its ultimate support in Moseley v. Electronic & Missile Facilities, Inc., 374 U.S. 167, 83 S.Ct. 1815, 10 L.Ed.2d 818 (1963).
 
 
 65
 In Moseley, the appellant was a subcontractor, who had performed plumbing, heating and air conditioning work for the prime contractor, appellee, Electronic & Missile Facilities, Inc., on a United States government contract for the construction of the Nike Hercules Facilities in Georgia. Appellant Moseley filed suit alleging that approximately $125,000 was due Moseley for work performed under the subcontract and that appellee had breached the subcontracts by refusing to pay. The appellant alleged that the subcontracts he and others had made with the prime contractor "were a fraudulent scheme to obtain a great amount of work and material from ... the subcontractors without making payment therefor and to 'browbeat' [the] subcontractors into accepting much less than the value of their claims." Id. at 171, 83 S.Ct. at 1817. Moseley alleged that one of the means used to effect the scheme was the insertion of an arbitration clause requiring arbitration of disputes in New York. The facts of the case indicate that appellee fraudulently intended to force the subcontractors to accept less than the full contract price for their services rather than incur the expense of going from Georgia to distant New York to arbitrate the disputes.
 
 
 66
 The Supreme Court in Moseley noted that appellant had attacked not only the subcontracts, but also the arbitration clauses contained therein, as having been procured through fraud. The Supreme Court stated:
 
 
 67
 In considering the question of the sufficiency of the pleadings with reference to the allegation of fraud [in the agreement to arbitrate], we believe that, as alleged here, the issue goes to the arbitration clause itself, since it is contended that it was to be used to effect the fraudulent scheme. If this issue is determined favorably to the petitioner, there can be no arbitration under the subcontracts.
 
 
 68
 Id..
 
 
 69
 Appellant Arnold contends that the present case is similar to Moseley. Appellant alleges a fraudulent scheme which was effected in part by the insertion of an arbitration clause in the stock purchase agreement. Appellant argues that it was error for the district court to order arbitration without first holding a trial, or at a minimum, an evidentiary hearing, on this issue, because Moseley states, "fraud in the procurement of an arbitration contract, like fraud in the procurement of any contract, makes it void and unenforceable and ... this question of fraud is a judicial one, which must be determined by a court." Id. at 172, 83 S.Ct. at 1818 (Black J, concurring).
 
 
 70
 Appellees contend that the Supreme Court's holding in Moseley was modified by its subsequent decision in Prima Paint v. Flood & Conklin Mfg. Co., 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967), in which the Court held that "arbitration clauses as a matter of federal law are 'separable' from the contracts in which they are embedded." Id. at 402, 87 S.Ct. at 1805. In Prima Paint, the Court determined that when a contract contains a forum selection clause, a distinction must be made between fraud in the inducement of the agreement to arbitrate and allegations of fraud concerning the contract as a whole.
 
 
 71
 Under Sec. 4, with respect to a matter within the jurisdiction of the federal courts save for the existence of an arbitration clause, the federal court is instructed to order arbitration to proceed once it is satisfied that the "making of the agreement for arbitration or the failure to comply [with the arbitration agreement] is not in issue." Accordingly, if the claim is fraud in the inducement of the arbitration clause itself--an issue which goes to the "making" of the agreement to arbitrate--the federal court may proceed to adjudicate it. But the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally.
 
 
 72
 Id. at 403-04, 87 S.Ct. at 1805-06. The Supreme Court concluded in Prima Paint that because the appellant had failed to indicate that the "making" of the agreement to arbitrate, viewed in isolation from the contract as a whole, was induced by fraud, the case should be referred to arbitration. Id. at 406, 87 S.Ct. at 1807.[7]
 
 
 73
 In the present case, the district court concluded that under Prima Paint, appellant failed to sufficiently plead fraud in the inducement of the agreement to arbitrate because appellant failed to supply the court with "any factual circumstances that suggest that the ... defendants intended to use the arbitration clause as a sword to prevent plaintiff from discovering the fact of the alleged fraudulent stock purchase scheme."
 
 
 74
 The question presented by the present case is thus whether the amended complaint contains a well-founded claim of fraud in the inducement of the arbitration clause itself, standing apart from the whole agreement, that would provide grounds for the revocation of the agreement to arbitrate.[8] Appellant's original complaint alleged only fraud in the inducement of the contract generally and did not challenge the "making" of the agreement to arbitrate. Therefore, under Prima Paint, the case would have been referred to arbitration. In its amended complaint, appellant belatedly sought to exploit the door left open in Prima Paint--that contractually prescribed arbitration will not be enforced if there is a well-founded allegation of fraud in connection with the "making" of the agreement to arbitrate. Although appellant in the present case argues that the arbitration clause was a fraudulent device intended to deny appellant discovery, we believe that this conclusory allegation could be inserted into any complaint involving fraud and arbitration and cannot be accepted at face value.
 
 
 75
 In the present case, appellant Arnold does not argue that the inclusion of the arbitration clause in the contract was effected by superior bargaining power or that, for all practical purposes, it deprived him of his day in court, as was the case in Moseley. Appellant instead alleges that the forum selection clause was inserted in the contract in order to keep him from effectively litigating his claim. He maintains that if he is forced to arbitrate the dispute, he will be denied the discovery which is necessary in order for him to prove his allegations. Although appellant's allegation is similar to the one in Moseley in that he alleges that the arbitration clause was used to effect a fraudulent scheme, the present case does not contain elements of a contract of adhesion or of a gravely difficult and inconvenient forum as Moseley did.
 
 
 76
 Appellant Arnold's argument is based on the premise that the arbitration clause was included in the contract to deny him the fruits of discovery. The arbitration clause in the contract between appellant and appellees states: "Any dispute arising under this agreement shall be submitted to arbitration under the rules of the American Arbitration Association at its Cleveland office." In the arbitration of a dispute under the Rules of The American Arbitration Association, the arbitrators may issue subpoenas for the attendance of witnesses and for the production of books, records, documents and other evidence, and they have the power to administer oaths. On application of a party and for use as evidence, the arbitrators may permit a deposition to be taken, in the manner and upon the terms designated by the arbitrators, of a witness who cannot be subpoenaed or is unable to attend the hearing. All provisions of law compelling a person under subpoena to testify are applicable. If the arbitrator were to deny Arnold access to the necessary records or persons to prove his claim and he were to lose, the judgment in favor of Arnold Corp. could be vacated under Section 10(d) of the Federal Arbitration Act, which permits a federal court to vacate an award where the arbitrators "so imperfectly executed [their powers] that a mutual, final, and definite award upon the subject matter submitted was not made." Thus the arbitral forum is not one in which appellant is denied the opportunity to pursue his claims. We do not believe that amendment of the complaint to include a charge that the arbitration clause was intended to effect a larger fraudulent scheme by limiting discovery is sufficient to constitute a "well-founded claim" that the arbitration clause itself, standing apart from the agreement as a whole, was induced by fraud.
 
 B.
 
 77
 Appellant not only relies on Moseley, but also on this court's recent decision in Michaels Bldg. Co. v. Ameritrust Co., 848 F.2d 674 (6th Cir.1988), which states:
 
 
 78
 A complaint should not be dismissed 'unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' In ruling upon a motion to dismiss under Rule 9(b) for failure to plead fraud 'with particularity,' a court must factor in the policy of simplicity in pleading which the drafters of the Federal Rules codified in Rule 8.... Indeed, Rule 9(b)'s particularity requirement does not mute the general principles set out in Rule 8; rather the two rules must be read in harmony. 'Thus, it is inappropriate to focus exclusively on the fact that Rule 9(b) requires particularity in pleading fraud. This is too narrow an approach and fails to take account of the general simplicity and flexibility contemplated by the rules.'
 
 
 79
 Id. at 679 (footnote and citations omitted). Appellant alleges that in light of this court's rejection of a strict reading of Rule 9(b) in Michaels Bldg., it was error for the district court to require detailed evidentiary pleading of fraud in the inducement of the agreement to arbitrate. The district court stated in its opinion that appellant's allegations of fraud in the inducement of the agreement to arbitrate were insufficient because they failed to specify which of the individual defendants actively sought to dupe appellant into agreeing to the arbitration clause. In Michaels Bldg., this court stated, "Rule 9(b) does not require omniscience; rather, the Rule requires that the circumstances of fraud be pled with enough specificity to put defendants on notice as to the nature of the claim." Id. at 680. In light of this statement, we believe that the district court erred in determining that Arnold's failure to specify which individual defendants actively sought to dupe him into agreeing to the arbitration clause was fatal to his claim. Appellant Arnold alleges that all of the defendants sought to dupe him into agreeing to the arbitration clause. We find this pleading specific enough to put defendants on notice as to the nature of the claim.
 
 
 80
 However, the error on this point does not affect the correctness of the district court's final judgment. The district court was correct in stating that appellant failed to supply the court with factual circumstances indicating how the arbitration clause was to be used as a device to prevent plaintiff from discovering the alleged fraudulent stock purchase scheme. Appellant does not specify what information he will be denied access to in the arbitral forum that otherwise would have been available to him. Although appellant alleges that he was purposely excluded from crucial Board of Directors' meetings, that there was a secret scheme to pay accrued dividends after Arnold had sold his preferred stock, and that appellees deceived him about the true worth of his company and had an undisclosed agreement to sell the company to Reynolds and Reynolds Co. when they purchased his stock, these facts concern fraud in the inducement of the contract as a whole, not fraud in the inducement of the agreement to arbitrate. The issue of fraud in the contract generally was not before the district court. The district court, however, mistakenly addressed this issue in its opinion, concluding that appellant was a sophisticated businessman who entered the sales agreement with a full understanding of its factual background. The district court relied on the fact that appellant was represented by a lawyer and on a clause in the stock purchase agreement that stated appellant "acknowledge[s] that [he] is fully familiar with the business affairs and financial condition of the Corporation and [he] is fully capable of evaluating the merits and risks of the sale of the Preferred Stock and the Common Stock to the Corporation." The district court's reliance on this recitation is misplaced in light of appellant's numerous allegations that appellees had been withholding and misrepresenting information concerning Arnold Corporation's finances. It was unnecessary and improper for the district court to address the issue of whether there was fraud in the procurement of the stock purchase agreement in general, and the determinations the district court made concerning this issue are hereby vacated. The door should be left open for the arbitrator to decide this issue after affording appellant discovery. This court in Michaels Bldg. stated that it is a principle of basic fairness that a plaintiff should have an opportunity to flush out a claim of fraud if fraud is pled with enough specificity to put defendants on notice as to the nature of the claim. Id.
 
 
 81
 Although the district court did not examine the arbitration clause in isolation from the rest of the stock purchase agreement as required by Prima Paint, the conclusion it reached concerning arbitration was correct. Appellant did not sufficiently plead facts that the arbitration clause was fraudulently induced to put the "making" of the agreement to arbitrate at issue. Appellant's contention that the arbitration clause was inserted in the contract as a device to prevent appellant adequate discovery does not constitute a well-supported or well-founded claim of fraud in the inducement of the agreement to arbitrate. Moreover, arbitration in Cleveland is not an inconvenient forum which in essence will deny appellant "his day in court" as was the case in Moseley. Although in Moseley, it was sufficient for the plaintiff to plead that the arbitration clause was part of a broader fraudulent scheme,[9] under Prima Paint, such an allegation, without more, is no longer sufficient to overcome the strong federal policy in favor of arbitration. For these reasons, we affirm the decision of the district court that the case should be referred to arbitration.
 
 IV.
 
 82
 Because we have decided that the case must be referred to arbitration, we must finally decide whether the nonsignatory defendants are entitled to arbitration as agents of the signatory defendant, The Arnold Corporation.[10]
 
 
 83
 Appellant argues that it cannot be compelled to arbitrate its claims against the nonsignatory defendants, who did not sign the stock purchase agreement, based on an agency theory, because the nonsignatory defendants were not acting in any representative or agency capacity with regard to the claims in dispute, nor do their positions as officers or directors of the Arnold Corporation serve as the basis for their liability.
 
 
 84
 Appellees argue that appellant in his original complaint alleged that fraud was perpetrated by the company's board through its "officers, directors and agents" and that he tacked on the nonsignatory parties--seven individuals and a corporation--as defendants in his amended complaint in a transparent attempt to avoid arbitral resolution of his dispute.[11]
 
 
 85
 We agree with the district court that if appellant "can avoid the practical consequences of an agreement to arbitrate by naming nonsignatory parties as [defendants] in his complaint, or signatory parties in their individual capacities only, the effect of the rule requiring arbitration would, in effect, be nullified." Arnold v. Arnold Corp., 668 F.Supp. 625, 629 (N.D.Ohio 1987). See also Hilti, Inc. v. Oldach, 392 F.2d 368, 369 n. 2 (1st Cir.1968).
 
 
 86
 In Letizia v. Prudential Bache Securities, Inc., 802 F.2d 1185, 1187 (9th Cir.1986), the court held that a broker's employees, who were nonsignatories to the brokerage agreement, were entitled to the agreement's arbitration clause in plaintiff's action against broker and employees for fraud and violation of federal securities laws. The plaintiff in Letizia claimed that his account executive and his supervisor had churned his account and traded securities on his behalf without regard to his investment objectives. The court of appeals for the ninth circuit found that:
 
 
 87
 Other circuits have held consistently that nonsignatories of arbitration agreements may be bound by the agreement under ordinary contract and agency principles. See, e.g., Barrowclough v. Kidder, Peabody & Co., 752 F.2d 923, 938 (3d Cir.1985); In re Oil Spill by Amoco Cadiz, 659 F.2d 789, 795-96 (7th Cir.1981); Interocean Shipping Co. v. National Shipping & Trading Corp., 523 F.2d 527, 539 (2d Cir.1975), cert. denied, 423 U.S. 1054, 96 S. Ct. 785, 46 L.Ed.2d 643 (1976); cf. Alyeska Pipeline Serv. Co. v. International Bhd. of Teamsters, 557 F.2d 1263, 1267 (9th Cir.1977).... The rule is an outgrowth of the strong federal policy favoring arbitration. See generally Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., U.S. , 105 S.Ct. 3346, 3353-54, 87 L.Ed.2d 444 (1985).
 
 
 88
 Id. at 1187-88.
 
 
 89
 We believe that the majority view as expressed in Letizia is persuasive and applies to the facts of the present case. Just as in Letizia, where all of the individual defendants' allegedly wrongful acts related to their handling of plaintiff's securities account as agents of the brokerage house, in the present case the nonsignatory defendants are alleged to have committed acts related to their running of the corporation. They are alleged to have formed committees of the Board of Directors from which appellant was excluded, decided whether and when to pay dividends, purchased and reissued corporate stock, and decided to sell the company.[12] All of these alleged wrongful acts relate to the nonsignatory defendants' behavior as officers and directors or in their capacities as agents of the Arnold Corporation. In Letizia, the employees were not deprived of arbitration simply because they were alleged to have sought personal enrichment through unauthorized "churning" of accounts. In the present case, as in Letizia, the language of the arbitration agreement indicates that the parties' basic intent was to provide a single arbitral forum to resolve all disputes arising under the stock purchase agreement. We believe that Arnold Corporation is entitled to have the entire dispute arbitrated, where, as here, the individual defendants and Carl Marks & Co. wish to submit to arbitration. We therefore will follow the well-settled principle affording agents the benefits of arbitration agreements made by their principal and affirm the district court's decision on this issue.
 
 V.
 
 90
 To conclude, the July 30, 1987 Order and the November 8, 1988 Order of Clarification of the district court compelling arbitration of all claims in this litigation against all parties is affirmed. Appellant's allegation that the arbitration clause was included in the stock purchase agreement to effect a broader fraudulent scheme by limiting discovery does not state a well-founded claim of fraud in the inducement of the agreement to arbitrate. However, those portions of the district court's July 30, 1987 opinion addressing fraud in the contract in general are hereby vacated. The issue of fraud in the procurement of the stock purchasing agreement is for the arbitrator to decide in proceedings consistent with this opinion.
 
 
 
 [1]
 Appellee Jira was President, Chief Executive Officer and a member of the Board of Directors and of its Executive Committee. Lautzenheiser was Vice President-Finance and Administration and acted as Secretary of the Board of Directors. Colhoun was a member of the Board of Directors. Mabbs was a member of the Board of Directors and Chairman of its Executive Committee. Lindgren was a member of the Board of Directors
 
 
 [2]
 At no time between January 1, 1981 and August 6, 1985 had Arnold received payment of any preferred stock dividends. Pursuant to the provisions of Arnold Corporation's restated certificate of incorporation, Arnold's share of accrued and unpaid dividends had accumulated to approximately $85,500
 
 
 [3]
 All circuits which have considered the issue have held that section 15, which was signed into law on November 19, 1988, should be applied retroactively. Hays and Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 885 F.2d 1149, 1152 (3rd Cir.1989); Turboff v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 867 F.2d 1518, 1521 (5th Cir.1989); Delmay v. Paine Webber, 872 F.2d 356, 358 (11th Cir.1989); Nichols v. Stapleton, 877 F.2d 1401, 1403 (9th Cir.1989) (per curiam); Jeske v. Brooks, 875 F.2d 71, 73 (4th Cir.1989)
 
 
 [4]
 This passage explicitly negates appellees' argument that 9 U.S.C. Sec. 15(a)(3) (which states that an appeal may be taken from "a final decision with respect to an arbitration that is subject to this title") should be construed narrowly to refer only to a decision that is made after the arbitration has occurred to enforce, modify, or vacate the award
 
 
 [5]
 Both appellant's and appellees' reliance on case law prior to the passage of new section 15 is misplaced. The Committee on the Judiciary explicitly stated that one purpose in passing the amendment was to give clarity to an area of the law that had become confused, obscure and relied on the procedural posture of the case. Appellant's reliance on Cincinnati Gas & Elec. Co. v. Benjamin F. Shaw Co., 706 F.2d 155 (6th Cir.1983) is misplaced as it concerns an order compelling arbitration and granting a stay. Under newly enacted section 15(b)(1), (2) and (3), such an order is no longer appealable as a final order
 Similarly, appellees' reliance on Denley v. Shearson/American Express, Inc., 733 F.2d 39 (6th Cir.1984) is misplaced. Denley also concerned an order compelling arbitration and granting a stay and is, in effect, overruled by newly enacted section 15.
 
 
 [6]
 The eleventh circuit in Thomson McKinnon Securities, Inc., 873 F.2d at 1399 held that an order in an action solely to compel specific performance of an agreement to arbitrate was a final order, relying on the prior distinction. However, because the legislative history of section 15 rejects this distinction, we do not agree with this aspect of the reasoning in McKinnon
 
 
 [7]
 In the ensuing years, the Supreme Court has rendered decisions in a number of cases upholding a strong federal policy in favor of arbitration. In Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), the Court stated, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Id. at 24-25, 103 S.Ct. at 941; see also Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985) (Arbitration Act requires district court to compel arbitration of pendant arbitrable claims); Mitsubishi Motors Corp., 473 U.S. at 640, 105 S.Ct. at 3360 (anti-trust claims subject to arbitration); McMahon, 482 U.S. at 238, 242, 107 S.Ct. at 2343, 2345 (Security Exchange Act of 1934 & RICO claims subject to arbitration); Rodriquez de Quijas v. Shearson/American Express, Inc., 490 U.S. 477, 109 S.Ct. 1917, 1922, 104 L.Ed.2d 526 (1989) (claim arising under Securities Act of 1933 subject to arbitration, overruling the Court's prior holding in Wilko v. Swan, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953))
 
 
 [8]
 In a recent opinion, this court held that where a plaintiff affirmatively pleads that the contract and the arbitration agreement therein were procured by fraud, the court should determine whether the arbitration clause was used to further the fraudulent scheme. C.B.S. Employees Federal Credit Union v. Donaldson, Lufkin and Jenrette Securities Corp., 912 F.2d 1563, 1567 (6th Cir.1990). However, in C.B.S., the issue of whether the plaintiff sufficiently pled fraud in the inducement of the agreement to arbitrate to put the "making" of the agreement to arbitrate at issue was not raised. Therefore, we are not bound by this opinion
 
 
 [9]
 In Moseley, it was implied that the arbitration clause was inserted into the contract through superior bargaining power in order to deprive the subcontractors of their day in court by forcing them into a contractual forum that would be gravely difficult and inconvenient. The Supreme Court has subsequently stated:
 A party resisting arbitration of course may attack directly the validity of the agreement to arbitrate. Moreover, the party may attempt to make a showing that would warrant setting aside the forum-selection clause--that the agreement was "[a]ffected by fraud, undue influence, or overweening bargaining power"; that "enforcement would be unreasonable and unjust"; or that proceedings "in the contractual forum will be so gravely difficult and inconvenient that [the resisting party] will for all practical purposes be deprived of his day in court."
 Mitsubishi Motors Corp., 473 U.S. at 632, 105 S.Ct. at 3356 (citation omitted).
 
 
 [10]
 At oral argument, the nonsignatory defendants indicated that they wished to submit the dispute to arbitration and agreed that they would be bound by the decision of the arbitrator
 
 
 [11]
 The individuals are all either officers of the corporation or members of the Board of Directors. Carl Marks & Co. is the broker-dealer that assisted in the stock purchase agreement
 
 
 [12]
 Appellant treats Carl Marks & Co. in the amended complaint as if it were the agent of the Arnold Corp. Appellant did not plead any separate charges against Carl Marks & Co., but routinely included the company in the list of non-signatory defendants whenever allegations against them were made