*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0284P (6th Cir.)
File Name: 03a0284p.06

# UNITED STATES COURT OF APPEALS

### FOR THE SIXTH CIRCUIT

_____

No. 02-3820

ROBERT FAZIO, et al.,
    *Plaintiffs-Appellees,*
    *v.*
LEHMAN BROTHERS, INC.;
LEHMAN BROTHERS
HOLDINGS, INC.,
        *Defendants,*
S.G. COWEN SECURITIES
CORPORATION; SOCIETE
GENERALE,
    *Defendants-Appellants,*
HAMBRECHT & QUIST, INC.;
J.P. MORGAN CHASE &
COMPANY,
        *Defendants.*

Nos. 02-3820/
3821/3822/3823/
3824/3825/3826/
3867/3868/3869/
3870/3873/3874;
03-3041/3042/
3043/3045/3112/
3113/3258

No. 02-3821

ROBERT FAZIO, et al.,
    *Plaintiffs-Appellees,*
    *v.*
LEHMAN BROTHERS, INC.;
LEHMAN BROTHERS
HOLDINGS, INC.,
    *Defendants-Appellants,*
S.G. COWEN SECURITIES

2     *Fazio, et al. v.*     Nos. 02-3820/3821/3822/3823/
      *Lehman Bros.,*     3824/3825/3826/3867/3868/3869/
      *et al.*            3870/3873/3874; 03-3041/3042/
                    3043/3045/3112/3113/3258

CORPORATION; SOCIETE
GENERALE; HAMBRECHT &
QUIST, INC.; J.P. MORGAN
CHASE & COMPANY,
        *Defendants.*

No. 02-3822

ROBERT FAZIO, et al.,
    *Plaintiffs-Appellees,*
    *v.*
LEHMAN BROTHERS, INC.;
LEHMAN BROTHERS
HOLDINGS, INC.; S.G. COWEN
SECURITIES CORPORATION;
SOCIETE GENERALE,
        *Defendants,*
HAMBRECHT & QUIST, INC.;
J.P. MORGAN CHASE &
COMPANY,
    *Defendants-Appellants.*

No. 02-3823

ROBERT FAZIO, et al.,
        *Plaintiffs,*
SAMUEL GLAZER,
    *Plaintiff-Appellee,*
    *v.*
LEHMAN BROTHERS, INC.;
LEHMAN BROTHERS

Nos. 02-3820/3821/3822/3823/
3824/3825/3826/3867/3868/3869/
3870/3873/3874; 03-3041/3042/
3043/3045/3112/3113/3258

*Fazio, et al. v.
Lehman Bros.,
et al.*    3

HOLDINGS, INC.,
            *Defendants,*
S.G. COWEN SECURITIES
CORPORATION; SOCIETE
GENERALE,
      *Defendants-Appellants.*


No. 02-3824

ROBERT FAZIO, et al.,
                  *Plaintiffs,*
SAMUEL GLAZER,
            *Plaintiff-Appellee,*
            v.
LEHMAN BROTHERS, INC.;
LEHMAN BROTHERS
HOLDINGS, INC.,
      *Defendants-Appellants,*
S.G. COWEN SECURITIES
CORPORATION; SOCIETE
GENERALE; HAMBRECHT &
QUIST, INC.; J.P. MORGAN
CHASE & COMPANY,
                  *Defendants.*


No. 02-3825

ROBERT FAZIO, et al.,
                  *Plaintiffs,*
DOMINIC A. VISCONSI, SR., et
al.,

4    *Fazio, et al. v.
Lehman Bros.,
et al.*

Nos. 02-3820/3821/3822/3823/
3824/3825/3826/3867/3868/3869/
3870/3873/3874; 03-3041/3042/
3043/3045/3112/3113/3258

            *Plaintiffs-Appellees,*
            v.
LEHMAN BROTHERS, INC.;
LEHMAN BROTHERS
HOLDINGS, INC.,
            *Defendants,*
S.G. COWEN SECURITIES
CORPORATION; SOCIETE
GENERALE,
      *Defendants-Appellants.*


No. 02-3826

ROBERT FAZIO, et al.,
                  *Plaintiffs,*
DOMINIC A. VISCONSI, SR., et
al.,
            *Plaintiffs-Appellees,*
            v.
LEHMAN BROTHERS, INC.;
LEHMAN BROTHERS
HOLDINGS, INC.,
      *Defendants-Appellants,*
S.G. COWEN SECURITIES
CORPORATION; SOCIETE
GENERALE,
                  *Defendants.*


No. 02-3867

PETER A. SPITALIERI,

*Plaintiff-Appellee,*
*v.*
LEHMAN BROTHERS, INC.;
LEHMAN BROTHERS
HOLDINGS, INC.,
          *Defendants,*
S.G. COWEN SECURITIES
CORPORATION; SOCIETE
GENERALE,
          *Defendants-Appellants.*

No. 02-3868
PETER A. SPITALIERI,
          *Plaintiff-Appellee,*
v.
LEHMAN BROTHERS, INC.;
LEHMAN BROTHERS
HOLDINGS, INC.,
          *Defendants-Appellants,*
S.G. COWEN SECURITIES
CORPORATION; SOCIETE
GENERALE,
          *Defendants.*

No. 02-3869
RICHARD LOPARDO, et al.,
          *Plaintiffs-Appellees,*
v.
LEHMAN BROTHERS, INC.;

LEHMAN BROTHERS
HOLDINGS, INC.,
          *Defendants,*
S.G. COWEN SECURITIES
CORPORATION,
          *Defendant-Appellant.*

No. 02-3870
RICHARD LOPARDO, et al.,
          *Plaintiffs-Appellees,*
*v.*
LEHMAN BROTHERS, INC.,
          *Defendant-Appellant,*
S.G. COWEN SECURITIES
CORPORATION,
          *Defendant.*

No. 02-3873
PETER M. BONUTTI, M.D.,
          *Plaintiff-Appellee,*
*v.*
LEHMAN BROTHERS, INC.,
          *Defendant,*
S.G. COWEN SECURITIES
CORPORATION,
          *Defendant-Appellant.*

No. 02-3874
PETER M. BONUTTI, M.D.,

Nos. 02-3820/3821/3822/3823/
3824/3825/3826/3867/3868/3869/
3870/3873/3874; 03-3041/3042/
3043/3045/3112/3113/3258

*Fazio, et al. v.
Lehman Bros.,
et al.*   7

8   *Fazio, et al. v.
Lehman Bros.,
et al.*

Nos. 02-3820/3821/3822/3823/
3824/3825/3826/3867/3868/3869/
3870/3873/3874; 03-3041/3042/
3043/3045/3112/3113/3258

*Plaintiff-Appellee,*
*v.*
LEHMAN BROTHERS, INC.,
  *Defendant-Appellant,*
S.G. COWEN SECURITIES
CORPORATION,
  *Defendant.*

No. 03-3041
ROBERT FAZIO, et al.,
  *Plaintiffs-Appellees,*
*v.*
COWEN & COMPANY,
  *Defendant-Appellant.*

Nos. 03-3042/3258
DOMINIC A. VISCONSI, SR., et
al.,
  *Plaintiffs-Appellees,*
*v.*
COWEN & COMPANY,
  *Defendant-Appellant.*

No. 03-3043
RICHARD LOPARDO, et al.,
  *Plaintiffs-Appellees,*
*v.*
COWEN & COMPANY,
  *Defendant-Appellant.*

No. 03-3045
PETER M. BONUTTI, M.D., et
al.,
  *Plaintiffs-Appellees,*
*v.*
COWEN & COMPANY,
  *Defendant-Appellant.*

No. 03-3112
DOMINIC A. VISCONSI, SR., et
al.,
  *Plaintiffs-Appellees,*
*v.*
LEHMAN BROTHERS, INC.;
LEHMAN BROTHERS
HOLDINGS, INC.,
  *Defendants-Appellants.*

No. 03-3113
DOMINIC A. VISCONSI, SR., et
al.,
  *Plaintiffs-Appellees,*
*v.*
S.G. COWEN SECURITIES
CORPORATION; SOCIETE
GENERALE,
  *Defendants-Appellants.*

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
Nos. 02-00157; 02-00370; 02-00382; 02-00761; 02-00764;
02-01018—John M. Manos, District Judge.

Argued: June 17, 2003

Decided and Filed: August 13, 2003

Before: NORRIS, DAUGHTREY, and ROGERS, Circuit
Judges.

_____

**COUNSEL**

**ARGUED:** Aaron R. Marcu, COVINGTON & BURLING,
New York, New York, for Appellants. Ari H.Jaffe,
KOHRMAN, JACKSON & KRANTZ, Cleveland, Ohio,
Robert P. Duvin, DUVIN, CAHN & HUTTON, Cleveland,
Ohio, David C. Frederick, KELLOGG, HUBER, HANSEN,
TODD & EVANS, Washington, D.C., Robert B. Casarona,
ROETZEL & ANDRESS, Cleveland, Ohio, John T. Murray,
MURRAY & MURRAY, Sandusky, Ohio, Daniel R. Warren,
BAKER & HOSTETLER, Cleveland, Ohio, for Appellees.
**ON BRIEF:** Laurence A. Silverman, COVINGTON &
BURLING, New York, New York, Mark O'Neil, Daniel A.
Richards, WESTON, HURD, FALLON, PAISLEY &
HOWLEY, Cleveland, Ohio, James Joseph Bartolozzi,
KAHN, KLEINMAN, YANOWITZ & ARNSON, Cleveland,
Ohio, Michael N. Ungar, Marvin L. Karp, Elin B. Young,
Christopher P. Fisher, ULMER & BERNE, Cleveland, Ohio,
David C. Weiner, Charna E. Sherman, SQUIRE, SANDERS
& DEMPSEY, Cleveland, Ohio, Pierre H. Bergeron,
SQUIRE, SANDERS & DEMPSEY, Cincinnati, Ohio, for

10    *Fazio, et al. v.*
*Lehman Bros.,*
*et al.*

Nos. 02-3820/3821/3822/3823/
3824/3825/3826/3867/3868/3869/
3870/3873/3874; 03-3041/3042/
3043/3045/3112/3113/3258

Appellants. Ari H.Jaffe, KOHRMAN, JACKSON &
KRANTZ, Cleveland, Ohio, Robert P. Duvin, Kenneth D.
Schwartz, DUVIN, CAHN & HUTTON, Cleveland, Ohio,
David C. Frederick, David E. Ross, Antonia Apps, K. Chris
Todd, KELLOGG, HUBER, HANSEN, TODD & EVANS,
Washington, D.C., Hugh E. McKay, PORTER, WRIGHT,
MORRIS & ARTHUR, Cleveland, Ohio, Robert B. Casarona,
Donald S. Scherzer, ROETZEL & ANDRESS, Cleveland,
Ohio, John T. Murray, Barbara Quinn Smith, MURRAY &
MURRAY, Sandusky, Ohio, Daniel R. Warren, Melissa M.
Eckhause, BAKER & HOSTETLER, Cleveland, Ohio, for
Appellees.

_____

**OPINION**

_____

ALAN E. NORRIS, Circuit Judge. This dispute arises
from a massive fraud in which Frank Gruttadauria, a
Cleveland stockbroker, misappropriated at least $54 million
of his clients' money. The plaintiffs, all clients of
Gruttadauria, brought this action against the brokerage houses
for which he worked over the course of his career. The
defendants moved to stay the proceedings and compel
arbitration pursuant to arbitration clauses in the account
agreements. The district court, relying largely on the gross
nature of the fraud, ruled that the arbitration clauses in the
agreements did not apply to the dispute and set the case for
trial. The defendants appeal this decision. Thus, the only
question of law in this interlocutory appeal is whether
similarly worded arbitration clauses in the plaintiffs'
brokerage account agreements mandate arbitration of their
claims.

Nos. 02-3820/3821/3822/3823/ 3824/3825/3826/3867/3868/3869/ 3870/3873/3874; 03-3041/3042/ 3043/3045/3112/3113/3258

*Fazio, et al. v.*   11
*Lehman Bros.,*
   *et al.*

## I

Frank Gruttadauria was a stockbroker for the defendant brokerage houses or firms that were purchased by them. As early as 1987, Gruttadauria began to send falsified statements to his clients that significantly overstated the value of their accounts. Gruttadauria had incurred significant losses in some of these accounts, and he falsified statements to cover this up.

To make good when clients requested withdrawals from their inflated accounts, Gruttaduaria either used new deposits by other clients or withdrew funds from other clients' accounts to make payments. In a separate criminal proceeding against him, Gruttaduaria entered into a plea agreement in which he admitted taking $54 million in "unauthorized withdrawals" between 1996 and 2002 alone. He also admitted that he gained at least $1 million personally from the fraud.

Gruttaduaria's scheme eventually collapsed. According to the plea agreement, by 2001 Gruttadauria's clients' accounts had a paper value of $278 million, while their actual value was only $1.8 million. Gruttaduaria fled after leaving a letter of confession. In the letter, he claimed that he was the only person involved in the scheme but implied that the brokerage houses were grossly negligent for not monitoring his activities. He later surrendered to authorities and pleaded guilty to a multi-count federal indictment.

Plaintiffs brought this action against defendants alleging numerous securities law violations including outright theft from their accounts. Most plaintiffs also allege churning, unauthorized trading, and excessive risk taking as well as a number of other common law and statutory claims. In denying the defendants' motions to stay the proceedings and

12   *Fazio, et al. v.*
   *Lehman Bros.,*
   *et al.*

Nos. 02-3820/3821/3822/3823/ 3824/3825/3826/3867/3868/3869/ 3870/3873/3874; 03-3041/3042/ 3043/3045/3112/3113/3258

compel arbitration, the district court did not provide a separate analysis for each arbitration agreement. However, the parties agree that each contains roughly the same language. The typical arbitration clause in the account agreements reads, "Any controversy arising out of or relating to any of my accounts, to transactions with you for me, or to this or any other agreement or the construction, performance or breach thereof, shall be settled by arbitration."

The district court held that the arbitration clauses were not binding because, given the nature of the fraud, the agreements were void *ab intitio* and there were effectively no accounts. In the alternative, the district court held that the fraud alleged here was not covered by the arbitration clauses. We reverse the district court and remand with instructions to consider the particular claims of the parties regarding the validity of the arbitration clauses standing apart from the account agreements as a whole.

## II

We have jurisdiction over this interlocutory appeal under 9 U.S.C. § 16(a)(1), which provides that an appeal may be taken from an order refusing to compel arbitration or refusing to stay an action pending arbitration. We review a district court's denial of these motions *de novo*. *Burden v. Check into Cash of Kentucky, L.L.C.*, 267 F.3d 483, 487 (6th Cir. 2001); *Stout v. J.D. Byrider,* 228 F.3d 709, 714 (6th Cir. 2000).

### A. *Federal Arbitration Act*

The Federal Arbitration Act ("FAA") provides that arbitration clauses in commercial contracts "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

Nos. 02-3820/3821/3822/3823/     *Fazio, et al. v.*   13
3824/3825/3826/3867/3868/3869/     *Lehman Bros.,*
3870/3873/3874; 03-3041/3042/        *et al.*
3043/3045/3112/3113/3258

9 U.S.C. § 2. If a court determines that the cause of action is covered by an arbitration clause, it must stay the proceedings until the arbitration process is complete. 9 U.S.C. § 3. In order to compel arbitration, a court must conduct a hearing, and:

> upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. . . . If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof.

9 U.S.C. § 4.

Under the statute, a district court must make a number of threshold determinations before compelling arbitration:

> When considering a motion to stay proceedings and compel arbitration under the Act, a court has four tasks: first, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

228 F.3d at 714.

It is a well-established rule that any doubts regarding arbitrability should be resolved in favor of arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1,

14    *Fazio, et al. v.*       Nos. 02-3820/3821/3822/3823/
     *Lehman Bros.,*      3824/3825/3826/3867/3868/3869/
     *et al.*            3870/3873/3874; 03-3041/3042/
                          3043/3045/3112/3113/3258

24-25 (1983). In addition, the Supreme Court has held that the FAA preempts state laws and policies regarding arbitration. *Southland Corp. v. Keating*, 465 U.S. 1, 10-11 (1984). State contract law, however, governs in determining whether the arbitration clause itself was validly obtained, provided the contract law applied is general and not specific to arbitration clauses. *Doctor's Assoc., Inc. v. Casarotto*, 517 U.S. 681, 686-87 (1996); *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Great Earth Cos. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002).

The leading Supreme Court case dealing with fraud and arbitration agreements is *Prima Paint Corp. v. Flood & Conklin Manufacturing Co.*, 388 U.S. 395 (1967). There, the Supreme Court held that a "claim of fraud in the inducement of the entire contract" is a matter to be resolved by the arbitrators, not the federal courts. *Id.* at 402-04. However, if there was a fraud that "goes to the 'making' of the agreement to arbitrate," then a federal court may adjudicate. *Id.* at 403-04. In so holding, the Court relied on the explicit statutory language of section 4 of the FAA:

> Under [section] 4, with respect to a matter within the jurisdiction of the federal courts save for the existence of an arbitration clause, the federal court is instructed to order arbitration to proceed once it is satisfied that 'the making of the agreement for arbitration or the failure to comply (with the arbitration agreement) is not in issue.' Accordingly, if the claim is fraud in the inducement of the arbitration clause itself--an issue which goes to the 'making' of the agreement to arbitrate--the federal court may proceed to adjudicate it. . . . We hold, therefore, that in passing upon a [section] 3 application for a stay while the parties arbitrate, a federal court may consider only

Nos. 02-3820/3821/3822/3823/     *Fazio, et al. v.*   15
3824/3825/3826/3867/3868/3869/     *Lehman Bros.,*
3870/3873/3874; 03-3041/3042/            *et al.*
3043/3045/3112/3113/3258

issues relating to the making and performance of the agreement to arbitrate.

*Id.* (footnotes omitted). Thus, even if there was fraudulent inducement to sign the contract as a whole, by the terms of sections 3 and 4 of the FAA, the arbitration clause is severable and will only be voided for fraudulent inducement in its making. *See also Ferro Corp. v. Garrison Indus.*, 142 F.3d 926, 933 (6th Cir. 1998) ("[T]he Supreme Court has held that once a court determines that the agreement to arbitrate has not been fraudulently induced, all other issues falling within that agreement are to be sent to arbitration.") (citing *Prima Paint* at 403-04).

This basic analysis does not change when applied to securities fraud claims. In *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220 (1987), the Supreme Court rejected an attempt to carve out an exception for Securities and Exchange Act violations. In doing so, the Court specifically approved the arbitration procedures of the New York Stock Exchange, the American Stock Exchange, and the NASDAQ, which are the arbitration fora specified in the account agreements at issue here. *Id.* at 233-34.

B.    *Validity of the Arbitration Agreements in Light of the Fraud*

Before a court can send a case to arbitration, it must first determine that a valid agreement to arbitrate exists. 9 U.S.C. § 2; *Stout,* 228 F.3d at 714. An arbitration agreement may be invalidated for the same reasons for which any contract may be invalidated, including forgery, unconscionability, and lack of consideration. *Casarotto,* 517 U.S. at 687. "[O]rdinary state-law principles that govern the formation of contracts" will apply to this analysis. *First Options*, 514 U.S. at 944.

16    *Fazio, et al. v.*       Nos. 02-3820/3821/3822/3823/
     *Lehman Bros.,*       3824/3825/3826/3867/3868/3869/
     *et al.*             3870/3873/3874; 03-3041/3042/
                       3043/3045/3112/3113/3258

The district court held that, because the money in the accounts was largely stolen and Gruttadauria had no intention of acting as a true broker for the plaintiffs, no account agreements really existed, thus making the agreements void *ab initio* and invalidating the arbitration clauses. Memorandum of Opinion, July 19, 2002 at 7. The district court distinguished *Prima Paint*, arguing that it was not applicable to "challenges to the very existence of the contract on the grounds that there was never an agreement at all." *Id.* In addition, the district court held that because of the theft there were no "accounts," and hence the account agreements are unenforceable. *Id.* at 7-8.

This reasoning is not consistent with two cases from this court that enforced arbitration clauses in securities fraud cases. *Arnold v. Arnold Corp.-Printed Communications For Bus.*, 920 F.2d 1269 (6th Cir. 1990); *C.B.S. Employees Fed. Credit Union v. Donaldson, Lufkin and Jenrette Sec. Corp.*, 912 F.2d 1563 (6th Cir. 1990).

In *Arnold*, we held that, in order to void an arbitration clause, the complaint must contain a "well-founded claim of fraud in the inducement of the arbitration clause itself, *standing apart from the whole agreement*, that would provide grounds for the revocation of the agreement to arbitrate." *Id.* at 1278; *Great Earth*, 288 F.3d at 890 (quoting *Arnold*). In addition, we noted that, under *Prima Paint*, allegations of fraudulent schemes are "no longer sufficient to overcome the strong federal policy in favor of arbitration." *Arnold,* 920 F.2d at 1281.

In *C.B.S. Employees*, the defendant brokerage house allegedly engaged in a large volume of unauthorized trades that resulted in substantial losses to an employees' credit union. The credit union brought an action alleging violations

Nos. 02-3820/3821/3822/3823/
3824/3825/3826/3867/3868/3869/
3870/3873/3874; 03-3041/3042/
3043/3045/3112/3113/3258

*Fazio, et al. v.* 17
*Lehman Bros.,*
*et al.*

of federal and state securities laws, as well as the Racketeer Influenced and Corrupt Organizations Act ("RICO"). We rejected the argument that the underlying fraud voided the arbitration agreements and held that "[t]he central issue, reduced to its simplest, is whether [plaintiff's] claim of fraud relates to the making of the arbitration agreement." *Id*. at 1566.

This court reinforced these rules recently in *Burden*, a case involving consumer fraud in a check cashing/loan scheme in which the true interest rate was allegedly over 500% that which was stated in the loan agreements. *Burden*, 267 F.3d at 486-87. In addition to the fraud, the defendants had also allegedly failed to obtain the proper state loan licenses. *Id*. at 489. Under the Kentucky law applied in *Burden*, loan agreements made without a license or in violation of certain other provisions of state law are void by statute. *Id*. at 490. The court concluded that the contract may well be void and rife with fraud, but these facts do not void the arbitration clause, which must be analyzed independently.[1] *Id*. at 490, 492.

The district court also found that, given the theft, no accounts existed and that this invalidated the arbitration clauses. This legal conclusion, however, conflicts with the

---

[1] Some of the plaintiffs assert that the criminal conduct alleged voids the arbitration clause. However, claims that, if true, amount to criminal behavior under RICO and antitrust laws have been held arbitrable by the Supreme Court. *See Shearson/American Exp., Inc. v. McMahon*, 482 U.S. at 239-240. In addition, all parties and the district court seem to agree that churning is arbitrable. Memorandum of Opinion, July 19, 2002 at 12-13. Churning, however, is a criminal act. *See, e.g., United States v. Trask*, 143 F. Supp. 2d 88, 89 (D. Mass. 2001) (discussing a 15-month prison sentence for a conviction under Securities and Exchange Act based solely on churning).

18 *Fazio, et al. v.*
*Lehman Bros.,*
*et al.*

Nos. 02-3820/3821/3822/3823/
3824/3825/3826/3867/3868/3869/
3870/3873/3874; 03-3041/3042/
3043/3045/3112/3113/3258

holding of an intervening case decided by this court. In *Javitch v. First Union Securities, Inc.*, 315 F.3d 619, 628 (6th Cir. 2003), we rejected the argument that arbitration clauses were void because of a fraudulent account and instead focused on the validity of the arbitration clauses standing alone.

In sum, when claims involve "the validity of the contract as a whole" and not just the arbitration agreement, "[s]uch claims are to be brought before the arbitrator, not the district court in deciding a petition to compel arbitration." *Great Earth*, 288 F.3d at 892 (citing *Prima Paint*, 388 U.S. at 404); *see also Burden*, 267 F.3d at 491.

C. *Scope of the Arbitration Agreements*

District courts have the authority to decide, as a threshold matter, whether an issue is within the scope of an arbitration agreement. *Stout*, 228 F.3d at 714. A proper method of analysis here is to ask if an action could be maintained without reference to the contract or relationship at issue. If it could, it is likely outside the scope of the arbitration agreement. *Ford v. NYLCare Health Plans of Gulf Coast, Inc.*, 141 F.3d 243, 250-51 (5th Cir. 1998) (applying Texas arbitration law under a choice of law provision). Torts may often fall into this category, but merely casting a complaint in tort does not mean that the arbitration provision does not apply. *Fyrnetics (Hong Kong) Ltd. v. Quantum Group, Inc.*, 293 F.3d 1023, 1030 (7th Cir. 2002). Even real torts can be covered by arbitration clauses "[i]f the allegations underlying the claims 'touch matters' covered by the [agreement]." *Genesco, Inc. v. T. Kakiuchi & Co., Ltd.*, 815 F.2d 840, 846 (2d Cir. 1987). We are, however, aware of the Supreme Court's warning against "forc[ing] unwilling parties to arbitrate a matter they reasonably would have thought a

judge, not an arbitrator, would decide." *First Options*, 514 U.S. at 945.

The district court held in the alternative that the allegations of theft placed the dispute outside the scope of the arbitration provision by reasoning as follows:

> Generally, the underlying basis for the Plaintiffs' claims is Gruttadauria's alleged theft of their assets. . . . Conduct amounting to theft is so beyond what is expected from a broker that such conduct could not have been within the reasonable contemplation of the Plaintiffs when they signed the alleged account agreements.

Memorandum of Opinion, July 19, 2002 at 8-9.

However, it is evident that the fraudulent activities were a violation of the account agreements and arose out of activities contemplated by those agreements–the sale and purchase of securities and the management of accounts. The lawsuit by necessity must describe why Gruttadauria was in control of the plaintiffs' money and what the brokerage houses' obligations were. The plaintiffs therefore cannot maintain their action without reference to the account agreements, and accordingly, this action is covered by the arbitration clauses.

Plaintiffs claim that Gruttadauria's outrageous conduct was unforeseeable, and hence they could not have anticipated arbitrating such claims. However, it is far from clear that the conduct here was unforeseeable. Aggregating the losses of all the parties, as the plaintiffs frequently do, leads to a shocking total loss. But analyzed individually, it is foreseeable that churning, unauthorized risk taking, and illegal transfers to third parties could destroy the value of an individual account.

Furthermore, the arbitration agreements are quite broad: "Any controversy arising out of or relating to any of my accounts, to transactions with you for me, or to this or any other agreement or the construction, performance or breach thereof shall be settled by arbitration." We take the arbitration agreements at their word, and hold that any dispute arising out of (or that must make reference to) the agreements, accounts, or transactions conducted by the defendants is subject to arbitration.

The district court itself noted that churning, unauthorized trading, and excessive risk-taking are clearly foreseeable problems in a brokerage account and are encompassed by the arbitration agreement. Memorandum of Opinion, July 19, 2002 at 12-13. Most of the parties here allege churning, unauthorized trading, and excessive risk-taking in addition to alleging outright theft, and all parties allege either negligent hiring or violation of explicit or implied contracts. Under the district court's own analysis, those claims should have been given to an arbitrator. *See Stout*, 228 F.3d at 714 ("[I]f the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.") In addition, the churning, excessive risk-taking, and unauthorized trading claims were part of the same fraudulent scheme and at the very least create doubts about the arbitrability of the theft claims, which should have been resolved in favor of arbitration as the Supreme Court directed in *Cone Memorial Hospital*.

### D. *Mutuality of Obligation*

The Supreme Court has held that, under the FAA, state law contract defenses such as fraud, duress, and unconscionability may be applied by courts to invalidate arbitration agreements.

Nos. 02-3820/3821/3822/3823/     *Fazio, et al. v.*    21
3824/3825/3826/3867/3868/3869/    *Lehman Bros.,*
3870/3873/3874; 03-3041/3042/             *et al.*
3043/3045/3112/3113/3258

*Casarotto*, 517 U.S. at 687. Mutuality has been included in that list as well. *Burden*, 267 F.3d at 491 (quoting *Matterhorn, Inc. v. NCR Corp.*, 763 F.2d 866, 868 (7th Cir. 1985)). This circuit has previously refused to compel arbitration on the grounds that an arbitration clause lacked mutuality when an arbitration service chosen by an employer retained the right to modify its rules without the employee's consent. *Floss v. Ryan's Family Steak Houses, Inc.*, 211 F.3d 306, 315-16 (6th Cir. 2000) (applying Kentucky and Tennessee law).

Plaintiffs argue that the arbitration agreements here lack mutuality because of the extensive self-help remedies in the account agreements that permit the defendants to seize the accounts of the plaintiffs for basically any breach of the account agreement. They argue that the defendants would never have to arbitrate a claim given this self-help provision, and therefore the clauses are unenforceable because there is no mutuality of obligation. The main case cited to support this notion is a California case, *Flores v. Transamerica HomeFirst, Inc.*, 113 Cal. Rptr. 2d 376 (Ct. App. 2001). There, a California appeals court held that the right of HomeFirst to foreclose prior to or during arbitration made the arbitration provisions "unconscionable." *Id.* at 382. To be enforceable, the court held that the arbitration agreement must at least contain a "modicum of bilaterality." *Id.*

Ohio law applies here, and there is no indication that Ohio courts have adopted the California rule. On the contrary, an Ohio Appeals Court recently held that mutuality is not a requirement of a valid arbitration clause if the underlying contract is supported by consideration. *Joseph v. M.B.N.A. Am. Bank, N.A.*, 148 Ohio App. 3d 660, 664, 775 N.E.2d 550, 553 (2002). This appears to be the general trend. *See Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 179-80 (3rd Cir.

22    *Fazio, et al. v.*         Nos. 02-3820/3821/3822/3823/
     *Lehman Bros.,*       3824/3825/3826/3867/3868/3869/
     *et al.*               3870/3873/3874; 03-3041/3042/
                   3043/3045/3112/3113/3258

1999) (collecting cases and concluding that mutuality of obligation is generally satisfied in arbitration agreements if the underlying contract is supported by consideration). There is no doubt here that the underlying contract was supported by consideration.

In addition, plaintiffs cannot rely on this court's limited holding in *Floss*. We distinguished *Floss* in *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646 (6th Cir. 2003) (en banc), while applying Ohio law. The employment contract at issue in *Morrison* provided that only the employee's claims were subject to arbitration and that the employer, with thirty days notice provided on a specified day, could alter the terms of the arbitration agreement. *Id.* at 667. While noting that the mutuality requirement of an arbitration clause is not settled law in Ohio, *Morrison* held that the notice provision was sufficient consideration to preserve mutuality and upheld the arbitration clause. *Id.* at 668. The fact that only one party was bound by the arbitration agreement was not a concern.

While it is true that the self-help provisions give the brokerage house an upper hand, the arbitration provisions cover "any dispute," not just disputes in which the brokerage houses are defendants. Thus, by the contract's terms, the clients have as much a right to force arbitration as the brokerage houses. The right of self help may make this occurrence unlikely, but as *Morrison* and *Joseph* demonstrate, the chance that it may happen is sufficient under Ohio law to preserve mutuality. We therefore hold that, assuming mutuality of obligation in the arbitration clause is a requirement under Ohio law, the arbitration clauses here easily satisfy that requirement.

### E. *Issues Specific to Individual Arbitration Agreements*

Because some parties raise issues specific to their arbitration agreements and because the record below is undeveloped in this regard, we are unable to conclude whether the arbitration agreements here are valid. "[A] well-founded claim of fraud in the inducement of the arbitration clause itself, *standing apart from the whole agreement*" may invalidate an arbitration clause, and district courts are authorized to make threshold rulings in this regard. *Arnold*, 920 F.2d at 1278.

It is firmly established that an arbitration clause obtained by forgery is not valid. *See, e.g.*, *Burden*, 267 F.3d at 488; *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1140 (9th Cir. 1991). Some plaintiffs have claimed that signatures on account agreements were forged, and Gruttadauria is a confessed forger. In addition, there are other valid concerns, such as whether a trust was bound by the signature of its trustee on separate accounts containing arbitration agreements and signed in an individual capacity. It is well-established that a lack of signatory power can invalidate an arbitration clause. *See, e.g.*, *Burden*, 267 F.3d at 489-90.

We cannot reach these fact-intensive issues, and we therefore "remand Plaintiffs' allegations that the arbitration agreements, separate from the loan agreements, are not enforceable against them on 'grounds as exist at law or in equity for the revocation of any contract.'" *Burden*, 267 F.3d at 493 (quoting 9 U.S.C. § 2 and *Casarotto*, 517 U.S. at 683.) In making this determination, the district court is bound by this court's previous directives to district courts in *Great Earth* and *Javitch*. *Great Earth* requires that, to invalidate the arbitration clauses, "the evidence presented [must be] such

that a reasonable finder of fact could conclude that no valid agreement to arbitrate exists." 288 F.3d at 889. *Javitch* specifies that "[b]efore compelling an unwilling party to arbitrate, the court must engage in a *limited review* to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties." 315 F.3d at 624 (emphasis added).

### III

For the foregoing reasons, the judgment of the district court is **reversed**, and this cause is **remanded** for a determination of whether the arbitration clauses, analyzed independently from the account agreements, are valid.