**KANSAS CITY UROLOGY, P.A., Midwest Neurosurgergy Associates, P.A., Kansas City Ob–Gyn of Kansas City, Cynthia Romito, Specialty Physicians Alliance, LLC., Rockhill Orthopedics, Dickson–Diveley Midwest Orthopedics Clinic, Respondents,**

v.

**UNITED HEALTHCARE SERVICES, United Healthcare of Missouri, United Healthcare of the Midwest, United Healthcare Insurance Company, Spectera, Inc., Ingenix, Inc., Blue Cross and Blue Shield of Kansas City, Goodhealth HMO, Inc., Appellants.**

Nos. WD 67814, WD 67815.

Missouri Court of Appeals, Western District.

July 15, 2008.

Lynn McCreary, Kansas City, for appellants.

Robert Horn, Kansas City, for respondents.

PAUL M. SPINDEN, Judge.

Blue Cross and Blue Shield of Kansas City and United Healthcare Services sepa-

rately appeal the circuit court's order to deny their motions to compel arbitration of the antitrust claims pending in a single case in circuit court and numbered 0516–CV04219. In this interlocutory appeal, Blue Cross and United Healthcare seek this court's immediate review pursuant to Section 435.440.1(1), RSMo 2000, and 9 U.S.C. Section 16(a)(1)(B) (1999). Because their appeals present identical issues, we consolidated them.

Kansas City area physicians and medical organizations entered into contracts with Blue Cross and United Healthcare. The contracts set the rate of reimbursement that Blue Cross and United Healthcare would pay the physician and medical organizations for their services. Each physician and medical organization signed a contract independently with either Blue Cross or United Healthcare. Each contract included an arbitration agreement.

The physicians and medical organizations sued Blue Cross and United Healthcare, asserting that the defendants had engaged in price fixing and monopolization in violation of antitrust provisions in Section 416.031, RSMo 2000. The defendants filed motions to compel arbitration of the dispute. The circuit court appointed a master to recommend whether or not the circuit court should compel arbitration. The master recommended that the circuit court compel arbitration, but the circuit court denied the motions despite the recommendation on the basis that the arbitration agreements did not encompass the physicians' antitrust claims, and, even if they did, the arbitration agreements were unconscionable.

In this interlocutory appeal, Blue Cross and United Healthcare assert that the circuit court erred in denying their motions to compel arbitration because the arbitration agreements are broad enough to cover the physicians' antitrust claims

and they are not unconscionable. Before considering the merits of their claim, we determine whether the Federal Arbitration Act (FAA), 9 U.S.C. Section 1, or the Missouri Uniform Arbitration Act, Chapter 435 of Missouri Revised Statutes governs. "The FAA applies to [arbitration] contracts evidencing transactions 'involving commerce.'" *McIntosh v. Tenet Health Systems Hospitals, Inc.*, 48 S.W.3d 85, 88 (Mo.App.2001) (quoting 9 U.S.C. Section 2). The phrase, "involving commerce," is "broad" and is the "functional equivalent" of "affecting commerce," which is a phrase that "signals Congress" intent to exercise its Commerce Clause powers [enunciated in U.S. CONST. art. I, Section 8] to the full." *Allied–Bruce Terminix Companies v. Dobson*, 513 U.S. 265, 273–74, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995). The courts have interpreted the phrase broadly. They have found that the FAA applies in cases in which the parties resided in different states, in which the parties used the United States Postal Service, or in which either employees or materials crossed state lines. *Edward D. Jones and Company v. Schwartz*, 969 S.W.2d 788, 793 (Mo.App. 1998). In this case, some of the plaintiffs and the defendants reside in different states and their activities affect interstate commerce; hence, the FAA applies.

The FAA says:

A written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. Section 2. This section creates substantive law enforceable in state courts. *Sitelines, L.L.C. v. Pentstar Corporation,* 213 S.W.3d 703, 706 (Mo.App.2007).

In considering a motion to compel arbitration under the FAA, the circuit court is obligated to apply federal law. *Id.* Because we are applying the FAA, opinions of the United States Supreme Court concerning the FAA are binding precedent. *Scott v. Blue Springs Ford Sales, Inc.,* 215 S.W.3d 145, 171 (Mo.App.2006). Although the opinions of the lower federal courts are not binding, we consider them for their aid and guidance. *Id.*

The FAA expresses the United States Congress's policy favoring resolution of disputes by enforcement of arbitration agreements, instead of resorting to the judicial system. *Estate of Athon v. Conseco Finance Servicing Corp.,* 88 S.W.3d 26, 30 (Mo.App.2002). This policy is not enough, standing alone, to extend an arbitration agreement beyond its intended scope because arbitration is a matter of contract. A party cannot be compelled to arbitration unless the party has agreed to do so. Whether or not a dispute is covered by an arbitration agreement is a question of law for the courts. *Id.* We review the circuit court's determination *de novo. Id.*

In determining whether or not a dispute is covered by an arbitration agreement, the circuit court first must decide whether the arbitration clause is narrow or broad. *Id.* A broad arbitration clause covers all disputes arising out of the arbitration agreement. A narrow clause limits arbitration to specific types of disputes. *Id.*

In this case, the physicians signed one of five variations of arbitration agreements with either Blue Cross or United Healthcare. These five arbitration agreements fit within two groups: those making no reference to the underlying reimbursement contracts and broadly stating that the parties agreed to arbitrate any disputes between them, and those that referred to the underlying reimbursement contracts.

Of those fitting within the group making no reference to the underlying reimbursement contracts, one of them required arbitration "if one of [the parties] does not agree with an action taken by the other[.]" Another required the parties to arbitrate "any and all disputes between them ... including but not limited to all questions of arbitrability, the existence, validity, scope or termination of the Agreement or any term thereof." Another agreement required the parties to arbitrate "any disputes about their business relationship." These agreements expressly covered more than disputes regarding the parties' contract. *See Zink v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 13 F.3d 330, 332 (10th Cir.1993) (clause saying " 'any controversy between [the parties] arising out of [plaintiff's] business' " was clearly broad enough to cover more than just disputes arising out of the contract);[1] *Belke v. Merrill Lynch, Pierce, Fenner & Smith,* 693 F.2d 1023, 1028 (11th Cir.1982), overruled on other grounds by *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985). Hence, the physicians who signed these agreements agreed to arbitrate any dispute that they had with Blue Cross and United Healthcare, even if the dispute did not involve the contract.

In the other group, the agreements specifically referred to the parties' underlying reimbursement contracts. Of these agreements, some between the physicians and

1. Alterations were in the original.

Blue Cross said that the parties must arbitrate any **"dispute . . . relating to or arising from this** Agreement[.]"[2] Others, between United Healthcare and the physicians, required the parties to arbitrate any dispute that arose out of or was "related to this Agreement." Although these arbitration clauses referred to the underlying reimbursement contracts, their scope was broad. *Collins Aikman Products Company v. Building Systems, Inc.*, 58 F.3d 16, 20 (2d Cir.1995) (clause submitting to arbitration "any claim or controversy arising out of or relating to th[e] agreement" was "the paradigm of a broad clause").[3]

The circuit court properly found that the clauses in this case were broad, but it relied primarily on *Academy of Medicine of Cincinnati v. Aetna Health, Inc.*, 108 Ohio St.3d 185, 842 N.E.2d 488 (2006), to determine that they did not cover the physicians' antitrust claims because the physicians could maintain their actions without referring to the underlying contracts. The circuit court explained:

> Of all the cases that have been cited, the most factually similar is *Academy of Medicine of Cincinnati et. al., v. Aetna Health, Inc., et. al.* [108 Ohio St.3d 185], 842 N.E.2d 488 (Ohio 2006). . . . That case involved physicians and nonprofit medical societies who sued several health care organizations for a conspiracy to fix reimbursement rates as relates to doctors and hospitals in the Cincinnati, Ohio area. The Ohio Supreme Court affirmed the lower court's denial of a motion to compel arbitration. The court reasoned that the state antitrust claims could be pursued independent of the provider agreements. Thus, the claims of the physicians were not subject to a motion to compel arbitration, which was a creature of contract.

Indeed, the Supreme Court of Ohio did declare in *Academy of Medicine of Cincinnati:*

> The *Fazio* test [found in *Fazio v. Lehman Brothers Inc.*, 340 F.3d 386, 395 (6th Cir.2003) ] applied by the court below helps determine whether the contractual relationship between parties is irrelevant or controlling. Since courts must sift through pleadings to determine whether a cause of action labeled as a tort or statutory claim is essentially a cause of action based upon the contract, we agree with *Fazio* that "a proper method of analysis is to ask if an action could be maintained without reference to the contract or relationship at issue."

*Academy of Medicine of Cincinnati,* 842 N.E.2d at 494 (quoting *Fazio,* 340 F.3d at 395). The Supreme Court of Ohio, however, misstated federal law.

■■■ Under federal law, arbitrability of a claim does not turn on whether or not the claim can be maintained without referring to the underlying contract but on whether or not the arbitration clause's scope is broad. *Estate of Athon,* 88 S.W.3d at 30. A broad scope creates a strong presumption in favor of arbitrability, and the circuit court should order arbitration of any dispute that "touches" matters covered by the parties' contract. *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir.1999) (citing *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 624 n. 13, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)); *Genesco, Inc. v. Kakiuchi & Company*, 815 F.2d 840, 846 (2nd Cir.1987).

The United States Court of Appeals for the Sixth Circuit declared this principle in *Fazio,* on which the Supreme Court of

---

**2.** Emphasis was in the original.

**3.** Alterations were in the original.

Ohio principally relied in deciding *Academy of Medicine.* The *Fazio* court said:

> District courts have the authority to decide, as a threshold matter, whether an issue is within the scope of an arbitration agreement.... A proper method of analysis here is to ask if an action could be maintained without reference to the contract or relationship at issue. If it could, it is likely outside the scope of the arbitration agreement.... Torts may often fall into this category, but merely casting a complaint in tort does not mean that the arbitration provision does not apply.... Even real torts can be covered by arbitration clauses "[i]f the allegations underlying the claims 'touch matters' covered by the [agreement]." *Genesco, Inc. v. T. Kakiuchi & Co., Ltd.,* 815 F.2d 840, 846 (2d Cir. 1987).

340 F.3d at 395 (citation omitted). Hence, whether or not a claim could be maintained without referring to the underlying contact is, at best, a preliminary, rather than a definitive, question, and the real test is whether or not the petition's factual allegations "touch" matters covered by the parties' contract. *See Simula, Inc.,* 175 F.3d at 721. We examine the physicians' petition, therefore, to determine whether or not their claims' underlying factual allegations touch matters covered in their reimbursement contract with Blue Cross or United Healthcare.

In their first count, entitled "Price Fixing," the physicians alleged that "Defendants ... entered into and participated in a conspiracy in the form of contracts, combinations and conspiracies in restraint of trade and commerce and to suppress and eliminate competition by fixing the rate of reimbursement paid by Defendants to doctors in the Region." In making this claim, the physicians pleaded:

76. Defendants' trust, continuing agreements and concert of action with co-conspirators is characterized by and included coordination of reimbursement methodologies and amounts and fixing and maintaining below market physician reimbursement rates in the Region.

77. Through high levels of communications, meetings, and other means and/or opportunities to conspire, including the exchange of pricing information, and methodology, Defendants established, maintained and continue to maintain an illegal trust, combination and conspiracy the purpose and intent of which was and is to illegally fix and depress physician reimbursement rates below competitive market levels.

. . . .

79. The Defendants almost simultaneously implemented nearly identical reimbursement methods and unilaterally change[d] rates and/or methods without negotiating with doctors.

In alleging that Blue Cross's and United Healthcare's actions injured them, the physicians pleaded:

85. Plaintiffs find themselves at a competitive disadvantage because the rates of reimbursement paid by Defendants results in inability of Plaintiffs to retain or recruit doctors to the Region.

. . . .

87. Consumers in the Region, in turn, are harmed by the lack of access to medical services provided by doctors who, for economic reasons, are unable to agree to Defendants' unreasonable contracts.

. . . .

89. Defendants' illegal trust, combination and conspiracy proximately caused injury to Plaintiffs who [are] doctors [that are] reimbursed by Defendants.

In Count II, entitled "Conspiracy or Combination for Purpose of Monopolizing," the physicians alleged that Blue Cross and United Healthcare engaged in an illegal monopoly:

> 93. The Defendants have engaged in anticompetitive conduct within the Region with the specific intent of monopolizing the health insurance market for the purpose of providing doctors with a financial incentive to provide less than adequate care, engaging in the unauthorized and unlicensed practice of medicine in the states of Kansas and Missouri and lowering, fixing and suppressing physician reimbursement rates while raising insured premiums.

In both counts, the physicians requested treble damages.

To prove these allegations, the physicians' evidence most likely will not focus exclusively on the parties' conduct under the terms of the contracts. Instead, the physicians most likely will attempt to introduce evidence of a conspiracy that was formed independently of the specific contractual relations between the parties. Hence, the physicians are technically correct that they could maintain their antitrust claims without referring to the underlying contracts. Nonetheless, the physicians assert that they have suffered damages as a result of the conspiracy, which they would not have suffered had they not agreed to reimbursement contracts with Blue Cross or United Healthcare. Hence, in that regard, the reimbursement rates in the contracts are the illegal action that Blue Cross and United Healthcare allegedly conspired to produce and are enough for us to conclude that the physicians' factual allegations touch matters covered by the parties' contracts. *See JLM Industries, Inc. v. Stolt–Nielsen SA,* 387 F.3d 163, 175 (2nd Cir.2004) (conspiracy to fix prices "touches matters" on the parties' contract because conspiracy resulted in the terms on the contract); *In Re Currency Conversion Fee Antitrust Litigation,* 265 F.Supp.2d 385, 406 (S.D.N.Y.2003) (alleged price fixing "touches matters" on the parties' credit card agreements because the fixed prices appear on the plaintiffs' monthly bill statements).[4] The circuit court erred in denying Blue Cross's and United Healthcare's motions to compel arbitration on the basis that the arbitration agreements do not cover the physicians' dispute.

 The circuit court's alternative basis for denying Blue Cross's and United Healthcare's motions for arbitration was that the arbitration agreements were unconscionable. Under the FAA, written agreements to arbitrate are "enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. Section 2. Accordingly, generally applicable contract defenses, such as unconscionability, can invalidate an arbitration agreement. *Whitney v. Alltel Communications, Inc.,* 173 S.W.3d 300, 308 (Mo.App.2005).

 In Missouri, unconscionability has two aspects: procedural and substantive. *Id.* Procedural unconscionability relates to the formalities of making the contract: whether or not one of the parties exerted high pressure on the other party during the negotiations, misrepresented material facts to the other party, or had a

---

4. This appeal involves only those physicians who entered into contracts with Blue Cross or United Healthcare that contained arbitration clauses of the kind described above. Because arbitration is a creature of contract, our ruling does not affect any physician who did not enter into such a contract, even if they otherwise fall within the plaintiff's proposed class definition.

significantly unequal bargaining power over the other. *Id.* Substantive unconscionability focuses on the contract's terms: whether or not they are unduly harsh. *Id.* For a contract to be void on the basis that it is unconscionable, it must be procedurally and substantively unconscionable, although not in equal amounts. *Id.* For example, a contract can be void because of a substantial amount of procedural unconscionability but only a small amount of substantive unconscionability, or vice versa. *Id.*

In finding that the contracts in this case were unconscionable, the circuit court declared:

> The allegations in this cause touch upon a large group of physicians and indirectly individual consumers throughout the Western District of Missouri who receive health care in the Kansas City area. The allegations themselves sound in conspiracy which can hardly be proven without joining other parties. Lastly, the legislature of the State of Missouri through statute has clearly demonstrated that the antitrust laws, in part, are to deter anticompetitive conduct. This Court believes that the unique set of facts to this particular litigation creates a factual perfect storm that makes these contracts unconscionable and against public policy. To enforce these arbitration agreements would be tantamount to granting immunity to these defendants regarding any

kind of claim touching upon conspiracy or relief as part of a class action.[5]

The circuit court erred.

The record establishes that the physicians made no claim of procedural unconscionability, and the circuit court made no finding of procedural unconscionability. This is a sufficient basis to reverse the circuit court's finding of unconscionability. *Id.* Hence, because the circuit court did not find that the agreements were procedurally unconscionable, it erred in overruling Blue Cross's and United Healthcare's motion to compel.

We, therefore, reverse the circuit court's order and remand the case to the circuit court so it can enter an order compelling arbitration.

VICTOR C. HOWARD, Chief Judge, HAROLD L. LOWENSTEIN, Judge, JAMES M. SMART, JR., Judge, JOSEPH M. ELLIS, Judge, THOMAS H. NEWTON, Judge, RONALD R. HOLLIGER, Judge, LISA WHITE HARDWICK, Judge, JAMES E. WELSH, Judge, JOSEPH P. DANDURAND, Judge, and ALOK AHUJA, Judge, concur.

---

**5.** We omitted a footnote.